No. 30,566.

THE FOURTH NATIONAL BANK IN WICHITA, *Appellee*, v. THE FIRST PRESBYTERIAN CHURCH et al., *Appellants*.

(7 P. 2d 81.)

644

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *George Stallwitz,* all of Wichita, for the appellants.

*Charles G. Yankey, John L. Gleason, Kenneth K. Cox, H. C. Osborne* and *J. Gregory Sears, Jr.,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action involves the validity of a contract made by Howard E. Case, now deceased, and the First Presbyterian Church of Wichita, in which Howard E. Case undertook during his lifetime to contribute and devote $100,000 of his money to pay one-half of the cost of a memorial for his deceased wife. The Fourth National Bank of Wichita was named as trustee to carry out the conditions of the contract. That bank filed its petition setting out certain wills and transactions between Howard E. Case and his wife, Sara B. Case, and in the disposition of property by the wills and transactions, and asking that certain heirs and beneficiaries under the wills should intervene and set forth their several rights and titles to the fund, and for a judgment construing the wills and determining the interests of all parties concerned, including the duties of the trustee in the premises. The parties came in and set up their several claims. The cross petitions filed by defendants, to whom devises and bequests were made, set up, among other things, that the contribution by Howard E. Case for a memorial to his deceased wife was invalid. Demurrers to the cross petitions were overruled and from the rulings an appeal has been taken.

The controversy involves only questions of law arising on the pleadings. From the record it appears that on May 2, 1928, each of the Cases made his and her separate will and at the same time their joint mutual and reciprocal will. In the individual wills bequests were made to children, relatives and friends of each, and then a provision leaving to the surviving husband or wife the residue of their property each to the other, with full power of disposal during his or her life. Mrs. Case died March 25, 1930, and her will was at once probated. The residuary clause of her will devised and bequeathed her property to her husband as follows:

"I devise, bequeath and give to my husband, Howard E. Case, if he survives me, all of my property, real, personal and mixed of whatsoever kind and where-

ever located, with the right to use any part and all of the rents, profits and income therefrom as he sees fit for and during his natural life, but nevertheless subject to the charges and conditions as herein expressed. He to have the right to sell, exchange, lease and dispose of any part and all of said property, but not by will other than as in his joint will provided, except the stock which I hold in the Davidson-Case Lumber Company, a Kansas corporation having its principal office and place of business in Wichita, Kan. His deed or conveyance to transfer the full fee and absolute title to any of said property.

"The rest, residue and remainder of my property and after the death of my said husband is to go as provided herein in the joint provisions made by my husband and myself to take effect after the death of each of us."

The individual will of Howard E. Case contained substantially like conditions as to the rights of Mrs. Case, if she survived him. In the joint and mutual will contemporaneously made the provisions pertinent to this controversy were:

"We, Howard E. Case and Sara B. Case, and each of us, consenting to and agreeing with each other, and in consideration of the provisions heretofore and hereafter made and subject to the devises and bequests herein heretofore severally made and to take effect upon the death of the survivor of us, do will, devise and bequeath as follows:" (Reciting the devises and bequests made by each to the other.)

In another paragraph of the joint will it was stipulated:

"We, Howard E. Case and Sara B. Case, covenant each with the other to abide by each of our wills as herein made and to abide by the joint and mutual will as herein made, and covenant not to make any will or codicil different than this after the death of either one of us and do hereby consent to the making of this will and the will of the other and accept hereunder, and we do each consent to the will of the other leaving to the other more or less than the one-half of his or her property to which he or she by law would otherwise be entitled."

After the death of Mrs. Case, Howard E. Case evinced a desire to build a memorial to Sara Blair Case, his wife, and as she had been a member of the First Presbyterian Church, he made a proposal to coöperate with the trustees of that church to the effect that he would deliver to the bank and the trustees of the church $100,000, to pay one-half of the cost of a memorial, up to $200,000, to be known as "The Sara Blair Memorial." The proposal was that if the church would pay one-half of the cost of the building and equipment and undertake the responsibility of construction and future maintenance, he would deliver to the bank, as trustee, $100,000 in cash. On December 12, 1930, the church on its part, acting through its trustees and congregation, accepted the offer and assumed all of the duties and responsibilities which the proposal imposed on them. This ac-

ceptance was served upon Mr. Case and the bank. The trustees of the church at once proceeded to raise the money with which to pay their one-half of the cost of the proposed memorial, and on March 30, 1931, they certified to the bank pledges and subscriptions approved by the bank as satisfactory, and in compliance with the terms of the proposal, aggregating more than $100,000. Howard E. Case died on the 4th day of January, 1931, which was about sixty-three days after he had made the proposal, and twenty-three days after the church's acceptance thereof. The church, claiming that it had complied with the contract, demanded of the bank that the $100,000 deposited there be made available to it in carrying out the contract. Shortly after that time this suit was commenced. From the pleadings it appears that Howard E. Case was at this time about sixty-eight years of age, and that prior to the transaction he had suffered with heart disease and knew under the state of his health the time of his death was only the matter of a few months. The contract between Howard E. Case and the church, in which the sum of $100,000 was appropriated, was given subject to the conditions expressed in the instrument, the amount to be raised by the church and the building commenced within fifteen months from the date of the agreement, and, "In case these conditions shall not have been performed within that time, then the entire sum shall be paid and turned over to the trustees of the said trust estate of Howard E. Case and Sara Blair Case, and the said gift as herein provided shall fail."

In the wills the Fourth National Bank was named as trustee with the stipulation that after the death of the survivor the trustee bank shall have and hold the title to all of the property up to and including July 1, 1937, and that it and its successor should have the right to sell, resell, lease and deal in the property, investing and reinvesting, collect and exchange, except that trustee should have no power to sell, exchange or dispose of the stock of the Davidson-Case Lumber Company of Wichita, owned by them at the time of their deaths, or to any stock dividends of that company without the written request and consent of all their surviving children. The question raised in the action is, Could Howard E. Case under the terms of the wills appropriate and devote the amount mentioned as a memorial to his deceased wife of his own money, or that derived from his wife's estate, under the contract made with the First Presbyterian Church? There can be little question that the proposal to the church, and its

acceptance by the trustees and congregation, were based upon sufficient consideration and constituted a binding contract if Mr. Case could legally contribute the money for the memorial. The money, it appears, was advanced and deposited by him in the bank, and the acceptance was made while he was living. The bank, as we have seen, found upon examination that an agreement had been made and that the conditions imposed on the church had been met. The amount devoted to a memorial was, of course, a considerable amount, $100,000, but it is alleged that each of the Cases owned property worth approximately $325,000, and as he had a total of $650,000, with power of use and disposition of the whole, the amount devoted to a memorial for his deceased wife may not be regarded as disproportionate or unreasonable. In smaller estates where a like proportion of the estate was devoted to a monument or memorial, it would not occasion any surprise or be regarded as extravagant or out of reason. What are the restrictions in the will of Mrs. Case which, under the contractual features of the joint will, limited him in the disposition of the estate? As we have seen, she devised and bequeathed all of the property of every kind with the right to use all of the rents, profits and income therefrom, with the right to sell, exchange, lease or dispose of all or any part of it in any way except by a will, and there was a further restriction on his power to dispose of the stock of the Davidson-Case Lumber Company. Probably this had been a profitable business which they believed to be as good or better than any other investment that might be made. In using, selling, leasing and disposing of the property left by his wife he was granted authority to execute deeds of conveyance, transferring the full fee and absolute title to any of the property of the estate. The broad power of disposal conferred upon him leaves little doubt of his power to enter into a contract with the church as to the erection of the memorial. The term "dispose of" is a broad and comprehensive one, but of course it is to be interpreted in connection with other language evidencing the intention of the parties who made the wills. It was at least intended to broaden and amplify the preceding terms used in the will. His right to dispose of the property left to him is controlled by the joint will in which each covenanted with the other to abide by the individual wills that each had made, and that neither would make any will or codicil after the death of the other different from the ones made. The wills of each did not take effect until the death of the parties and were, of course, subject to be changed or

revoked at any time before their death. Mr. Case had, as we have seen, a large estate of his own and was conducting business after the death of his wife. It was within his power to change his will or revoke it and make a new one, even if it constituted a breach of a contract not to alter it, and for which he or his estate might be liable. In *Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065, it was said:

"Disposition of property by will is.a proper subject of contract. If the contract be in substance or effect not to revoke a will, the will as a will is nevertheless revocable, without notice to anybody. It cannot then be probated as the will of the person revoking it and, if the revocation be by means of a second will, the second will is probatable as the will of the testator. The revocation, however, breaches the contract, and the contract is enforceable in equity against the estate of the testator." (p. 216.)

Mr. Case made no alteration in his will, and while he was exercising the comprehensive power conferred on him in dealing with both estates the memorial contract was made. That contract did not operate as a violation of any restriction placed on him by the will of his wife which he agreed to carry out; that is, he did not dispose of any of the estate by a will different from those made, and did not sell or dispose of any of the stock of the lumber company. The provision he made for a memorial does not fall within any of the enumerated restrictions; otherwise he was vested with full power of disposition and with authority to give a full title to any part of the estate to anyone with whom he contracted.

.It is contended that the provisions of the joint will impressed the property with a trust which required him to hold and handle it in accordance with their mutual agreements, and that any disposition of his or her property which would reduce or impair the estate is invalid. It is argued that any act of his that would necessarily deplete the estate was beyond his power and his act therefore ineffectual. It may be said that the trust did not become effective until after the memorial contract was made. Under the will it was not to become effective until after the death of both of them. After the death of his wife he had dominion and control of her property as well as his own, and with the powers given him in the wills could make binding contracts relating to all the property other than that which was expressly excepted from a disposition of it. In the exercise of his powers there might be a reduction of the estate without affecting the validity of the contracts made. He was not required to keep the estate up to the value which it had when the wills were

made or when his wife died. He may have made sales at a price lower than what might have been afterwards obtained. Some of his dealings may have turned out to be improvident or unprofitable investments which tended to reduce the estate, but if made in good faith these would not have operated to destroy the validity of the contracts he had made with others. He had a right to use money in keeping with his station in life and circumstances, and the right to meet the ordinary social and civic demands in the community. The desire to devote part of his means in erecting a memorial to his wife was a natural and honorable one, and the building of one in conformity with the ordinary conventions and customs of the period is one to be commended. The contract being valid and not within any restriction placed upon him by the will, he had, in our view, the power and right to make the contract.

We conclude that the contract, which appears to have been free from any taint of bad faith or fraud, is not a violation of the trust and is a valid and enforceable one. It follows that the order overruling the demurrers of the appellant must be reversed with the direction to sustain them. It is so ordered.

HARVEY, HUTCHISON and SLOAN, JJ., dissenting.