No. 31,247

THE FOURTH NATIONAL BANK IN WICHITA, *Appellee*, v. THE FIRST PRESBYTERIAN CHURCH OF WICHITA et al., *Appellants*.

(23 P. 2d 491.)

Opinion filed July 8, 1933.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *George Stallwitz,* all of Wichita, for the appellants.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr.,* and *Verne M. Laing,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is the second appearance of this case in this court. (*Fourth National Bank v. First Presbyterian Church,* 134 Kan. 643, 7 P. 2d 81.) That appeal involved the validity of a contract made by Howard E. Case with the First Presbyterian Church of Wichita for the erection and maintenance of a memorial to the deceased wife of Case, to be designated as "The Sara Blair Case Memorial." By the contract Case was to provide $100,000 for the purpose, and the church was to provide an equal amount. Case then provided and deposited with the Fourth National Bank the $100,000, and the church raised and pledged an amount of over $100,000, and the pledges made by the church were to be applied and certified by the bank to be a compliance of the provision on the part of the church. On March 30, 1931, the bank approved the provision made for the memorial by the church. Among other things it was provided in the contract that the bank should act as trustee. The bank received the money promised and provided by Case, and it also approved the contribution pledged by the church, but on April 4, 1931, the bank filed an action in which the church, minor heirs and others were made parties. Answers and cross petitions were filed and questions were raised that the contract was invalid in that it conflicted with provisions of a joint and mutual will made by Case and his wife, and that Case had no power to use the property mentioned in the wills for a memorial, and that it was a violation of the trust arising from the joint and mutual will that had been made.

The judgment of the district court on the issues raised was brought to this court on appeal, and the decision of this court reversing that of the district court was to the effect that the contract for the erection and maintenance of the memorial was not a violation of the wills nor of the trust created by the wills, but was valid and enforceable. The mandate of this court was spread of record in the district court on April 5, 1932, and on April 23, 1932, the bank and the heirs were given thirty days in which to plead. Cross petitions and other pleadings were filed on July 13, 1932, by the bank as executor and trustee, and also by minor heirs and devisees. They raised the question that the limitation of time in which to commence the erection of the memorial as specified in the contract had elapsed, and that, therefore, the money provided could not be expended for that purpose. Demurrer was filed by the church to these pleadings.

In the contract it was stated:

"It is a further condition of this gift that the funds to be raised by said church shall have been raised by funds available for that purpose by the said church or by good and valid pledges and promises, as herein provided, and certified to the bank as herein provided, and work on the commencement of the building of said structure started all within fifteen months from the date of this instrument, and in case these conditions shall not have been performed within that time, then the entire sum shall be paid and turned over to the trustees of the said trust estate of Howard E. Case and Sara Blair Case, and the said gift as herein provided shall fail."

The appellee contended and the trial court held that the failure of the church to begin the construction of the memorial within fifteen months from November 13, 1930, deprives the church of the use of the money held by the bank to construct the building, and bars it entirely from its use, while the appellant contends that as the appellees interfered, and by their litigation prevented performance, the ground of nonperformance was not available to them. This question is the one presented upon this appeal.

It would appear that the church could hardly be expected to commence the structure when the bank and other claimants of the money had begun the action to have the contract declared void and were urging that the money provided by Case, and held by the bank, could not be used in building the memorial but belonged to the Case heirs and devisees under the will. As we have seen, the contract was made November 13, 1930. The money provided by Case had been deposited in the bank, and the pledges to be provided by the church

were provided to the satisfaction of the bank, as trustee, on March 30, 1931. Twenty-five days later, and on April 24, 1931, the bank began the action alleging that the contract was invalid and that no part of the money could be used for the construction of the Sara Blair Case memorial. The heirs and devisees of Case came into the action in September, 1931, and by cross petition and answers challenged the validity of the contract and the right to use the money provided to carry it out. That action proceeded to judgment in the district court, which was rendered on October 14, 1931. An appeal was taken from that decision to the supreme court and was decided by this court on January 30, 1932, the mandate of the court went down, whereupon the bank and the contending heirs and devisees asked and were granted leave to file supplemental pleadings within thirty days and this was done. On these pleadings, to which a demurrer was filed by appellant, the question was determined on December 27, 1932, and this appeal was promptly taken.

It thus appears that the interference and action of appellees have been persistent and continuous since April 24, 1930, when the bank certified that compliance had been made by the church with the provisions of the contract under which the $100,000 was paid to the bank by Case. The appellees are still here contending that the money provided for the structure cannot be used to build the Sara Blair Case memorial.

The question is presented whether the interference of appellees and the litigation has delayed the church and practically rendered performance impossible within the time stated in the contract, and whether such conduct estops them from invoking the rule of nonperformance which they occasioned. There is a well-recognized rule, "That one who prevents a thing may not avail himself of the nonperformance which he has occasioned." (*McDonald v. Wyant,* 167 Wash. 49.)

The general rule is that where a party by his contract charges himself with an obligation possible to be performed, he must perform it unless performance is rendered impossible by the act of God, by the law or by the other party. (13 C. J. 635.) Here the appellees (the other parties) employed the processes of the law to prevent the use of the fund provided for the memorial. It has been determined that the action brought by the appellees and the claims made by them were unjustifiable and wrong. Shall parties who wrongfully

interfere and make performance practically impossible be allowed to take advantage of their own wrong? It is true that no injunction was asked or granted, but the proceedings were of such a nature that they were as effective, almost, as an injunction could have been.

A case which is quite analogous to the one at bar is *Peek v. Woman's Home Miss. Society,* 304 Ill. 427. There Mrs. Martha E. Peek, in a will, gave a farm of 150 acres to the missionary society for the establishment and maintenance of an orphans' home. One of the provisions of the will was that the orphanage should be established within three years after the death of the testatrix, and while the missionary society accepted the gift within a year after the death, the heirs of the testatrix in the following years brought a number of suits denying the validity of the devise to the missionary society and claiming that the heirs were entitled to the farm. It appears that the missionary society was called upon to defend its claim of title in various courts for a number of years, and the contention was carried before the supreme court in various phases— three times before the case in which it was finally decided. This interference and opposition was continued much longer than the three-year period, and finally it was contended, as here, that the failure of the missionary society to establish the orphanage within the three years mentioned in the will forfeited its right to the farm. The court, in one of the appeals, speaking of the litigation and the delay caused by the heirs, said:

"From all the testimony it appears to us that there was, in the exercise of good judgment by appellant, good reason for not taking the risk of the expenditure of a large amount of money in converting the premises into a home for orphan children while its title was disputed by the heirs. Appellant was at no time enjoined from establishing an orphanage on the farm, but under the circumstances even a society not organized for charitable purposes and with plenty of money and resources could hardly have been expected to risk the expenditure of money in preparing the farm for the use to which the testatrix desired it put, while its right to the property was denied and a considerable part of the time was being litigated. It is true the will made no provision for any such contingency but required the orphanage to be established within three years after testatrix's death, but this provision should receive a reasonable construction. As we have said, it was not in contemplation of the testatrix that the heirs, who are all collateral heirs, would obstruct appellant in carrying out her intention and purpose by denying the title of appellant, talking about attacking it by litigation and actually bringing suit to defeat it, until the three years had expired, and then claim and obtain the property on the ground that appellant had not appropriated the property to

use as an orphans' home within three years. . . . Signifying its acceptance of the gift within a year by appellant was imperative, but the condition as to the three years given for establishing the orphanage should receive a reasonable construction, especially in view of the nature and character of the devise and the devisee, and in determining whether the delay was reasonable and prudent or negligent and unreasonable all evidence throwing light on the question should be admitted and considered. If the heirs seeking to profit by the delay in establishing the orphanage by their own acts and conduct materially contributed to produce the delay, it would seem most unconscionable to allow them to benefit by such acts and conduct." (*Peek v. Woman's Home Miss. Society,* 293 Ill. 337, 346, 348.)

The conclusion of the court was that the heirs could not take advantage of the delay which they had occasioned and that the Missionary Society was entitled to the farm, citing a number of authorities.

In the contract made by Mr. Case with the church he was to provide one-half of the cost of the memorial, and he set that sum apart and deposited it with the bank for the purpose of erecting the memorial. The church made provision for the other half of the cost, and while Case fixed the time of the commencement of the structure—the time deemed necessary for organization and preparation to begin such a project and which would have been sufficient if there had been no obstruction or delay caused by the appellees— the time would have been ample. Evidently Mr. Case did not contemplate that the appellees would drag the church into court to defend the validity of the contract he had made in order to secure the building of a memorial. The principal object of Mr. Case was the construction of a memorial in honor of his wife, the cost of which was to be paid in equal proportions by the two parties. Time of the commencement of the construction within a specified time was not the essential part of the contract, and if it had been known that appellees would contest the validity of the contract and institute litigation to defeat the purpose which was a natural, beneficent and commendable one, Mr. Case would have provided for such a contingency. Because of the opposition and litigation the appellant has not had fifteen months in which to begin the construction. The litigation was begun about five months after the contract was made and has been persisted in up to the present time. The appellant is entitled to the specified time outside of that in which appellees prevented the performance of the condition.

Appellees cite and rely on *Zinc Co. v. Burtiss,* 72 Kan. 441, 83 Pac.

989. The facts in that case, however, are quite dissimilar to those of the present case. A lessee of an oil and gas lease brought an action to enjoin the lessor from interfering with leased premises and, also, to extend the lease for a period because the lessor had brought an action to have the lease declared void for the reason that the term of the oil and gas lease had expired and that no oil or gas had been produced by the lessee. In that case the decision was in favor of the lessee. From the record it appeared that the lessor had not agreed to do anything towards development of the property or to contribute towards the cost thereof. That burden rested wholly upon the lessee. In the action to cancel the lease for nondevelopment, the lessee could not urge that its failure to develop had been caused by the failure of the lessor to advance money or to do something towards the development work. The relations between the respective parties and the obligations were unlike those of the present case, as here the cost of the memorial was to be paid by both parties in equal proportions, and yet the appellees have withheld the money provided for the purpose and prosecuted an action to prevent the use of the money for the memorial.

The cited case of *Salvation Army v. Watts*, 130 Kan. 714, 288 Pac. 764, is inapplicable and in no sense an authority in the question involved here. There a gift had been made by a testatrix to erect a building for the Salvation Army, to be commenced within two years after the death of the testatrix. The Salvation Army undertook to have the gift appropriated to pay for a building erected three years before her death, and it was held that a building erected years before that time did not comply with the condition to erect a building two years after her death.

As authorities supporting features of the questions involved in the case and the contentions of the appellant, see *Hamilton v. Empire Gas & Fuel Co.*, 297 Fed. 422; *Harris v. Wright*, 118 N. C. 422; *Trustees of Cory Universalist Society v. Beatty*, 28 N. J. Eq. 570. It is suggested that the Peek case cited was based upon a will and not a contract as in this case, and that the decision is therefore not applicable.

We discover no difference in the application of the principle to a contract as well as a will, that a party who prevents the performance of a condition cannot avail himself of nonperformance which he had occasioned.

The pleadings fairly raise the point which counsel have argued and which the court has decided, and our judgment is that the decision of the court overruling the demurrer shall be set aside, with the direction to sustain the same.