No. 42,866

In the Matter of the Estate of Elizabeth J. Roberts, Deceased. (MARK K. CARROLL, Bishop of the Roman Catholic Diocese of Wichita, Kansas, and M. J. GORGES, Parish Priest of Holy Name Church of Coffeyville, Kansas, *Appellants,* v. THE FIRST NATIONAL BANK OF COFFEYVILLE, KANSAS, Executor, HAROLD O'CONNELL, PATRICIA O'CONNELL LIND, MARGARET O'CONNELL WEST, JAMES O'CONNELL, HELEN GOETZ and CLARE BROWN, heirs of Elizabeth J. Roberts, deceased, *Appellees.*)

(373 P. 2d 165)

Opinion filed July 13, 1962.

*Emmett A. Blaes,* of Wichita, argued the cause, and *Roetzel Jochems,* also of Wichita, and *Frank W. Liebert,* of Coffeyville, were with him on the brief for the appellants.

*Aubrey Neale,* of Coffeyville, argued the cause, and *Ray A. Neale,* also of Coffeyville, was with him on the brief for the appellee, The First National Bank of Coffeyville.

*Clement H. Hall,* of Coffeyville, argued the cause, and *James A. Brown,* of Chicago, Illinois, was with him on the brief for the appellees, the heirs of Elizabeth J. Roberts, deceased.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the trial court construing a joint will, and holding that a bequest for charitable purposes lapsed upon failure of the trustee to comply with a condition stated in the will.

The questions presented are: (1) Whether on the facts in this case the trial court erred in holding the bequest for charitable purposes in the joint will of a husband and wife was conditioned upon the building of a Catholic hospital in or within one mile of Coffeyville, Kansas, within two years after the death of the survivor; and (2) whether the trial court erred in refusing to make the Attorney General of Kansas an additional party.

On June 4, 1930, James A. Roberts and his wife, Elizabeth J. Roberts, made their joint and mutual will. The provisions of the will pertinent to this appeal read as follows:

"III. It is the will, direction, and desire of each of us, and the mutual desire and will and direction of both of us, that on the death of either of us, all of the property of the deceased party whether real, personal, or mixed, shall descend and become the sole and separate property of the survivor of us for his or her use and benefit so long as the survivor shall live.

"IV. *It is the will, direction, and desire* of each of us, and our mutual will and *direction,* that on the death of whichever one of us survives the other, *all of our property, of whatsoever kind or nature and wheresoever situated, shall descend to and become the property of the Bishop of the Roman Catholic Church of the Diocese of Wichita, Kansas,* or in the event that the Roman Catholic Church of Coffeyville, Kansas, commonly known as Holy Name Church, in Holy Name Parish, should, for any reason, not be under the jurisdiction of the Bishop of Wichita, Kansas, Diocese, then it is our will, jointly and severally, that all of our property of any kind or nature whatsoever, wheresoever situated, descend to and become the property of the Bishop having charge and jurisdiction of the Roman Catholic Church of Coffeyville, Kansas, the Holy Name Parish, *And this is our will, order, and direction, subject to the burdens, restriction, and trusts hereinafter named and reserved in this instrument of writing, our last will and testament.*

"V. *We, and each of us, jointly and severally, order, will and direct, that the Bishop of the Wichita Diocese,* or the Bishop of the Diocese having jurisdiction of the Catholic Church of Coffeyville, Kansas, at the time of the death of the survivor of us, *with said moneys and funds, shall build a hospital of a general nature for the treatment of the general diseases, and this the said Bishop shall do not later than two (2) years after the decease and demise of the survivor of us;* that said hospital shall be built in the City of Coffeyville, Kansas, and in no event to be built at a greater distance than one (1) mile from the then corporate limits of the City of Coffeyville, Montgomery County, Kansas.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"VII. It is the will, order, and direction of each of us, and the will, direction and order of both of us, that there descend to the *person or persons having the charge of said hospital* or the persons having jurisdiction over the same, *the sum of $500,* to have and to hold unto their person *in trusts,* to put the same at interest in some investment or security or bonds approved by the Probate Court or in a manner approved by the Probate Court, to use the interest of same amount of money *for the purpose of maintaining the keeping [of] our graves in proper, respectable, and decent repair and appearance.*

"VIII.   .   .   .   It is the will, order, direction, of each of us and the will, order, and direction of both of us, that in the event a Catholic hospital is built here at Coffeyville, or within a mile of the city limits of Coffeyville, before the death of the survivor of us, that then all of said moneys, credits, properties, of whatever kind or nature, whatsoever, and wheresoever situated, shall and must on the death of the survivor of us descend to and become the property of the Bishop of the Wichita Diocese or the Bishop having jurisdiction over the Holy Name Parish of the Roman Catholic Church, of Coffeyville, Kansas, and by him and under his direction to be used for the support and maintenance of said hospital.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"X. *We further order that the executors acting under this will reduce to cash, as soon as may be, without taking any unnecessary loss or losses, the property, real, personal, or mixed, which said executors shall receive under and by the terms of this will, provided, that no municipal, state, county, or*

*United States bonds shall be sold or disposed of by the executors of this will until the Bishop aforesaid has let, or caused to be let, a contract for the building of said hospital;* or in the event a hospital is built before the death of the survivor of us, then said bonds shall not be sold until the Bishop aforesaid shall give the executors 30 days notice in writing that he desires that said bonds be reduced to cash. *That all properties, except municipal, state or United States bonds shall be reduced to cash by said executors,* but no bonds shall be reduced to cash by the executors until they are notified in writing by the Bishop so to do.

. . . . . . . . . . . . .

"XIII. We, and each of us, jointly and severally, hereby mutually pledge and promise each other that this will is irrevocable on the death of one of us." (Emphasis added.)

Changes made by two subsequent codicils are immaterial to this appeal. It is to be noted that *neither the will nor the codicils contained any residuary clause* providing for the disposition of the testators' estate in the event any of the bequests therein lapsed for one reason or another.

The survivor, Elizabeth J. Roberts, died on the 15th day of July, 1958, her husband having predeceased her by some eighteen years, and the will was admitted to probate in Montgomery County, Kansas, on the 27th day of August, 1958. The First National Bank of Coffeyville, designated in the second codicil, was appointed executor.

The inventory and appraisement in the Elizabeth J. Roberts estate shows a gross estate of $98,417.12, including real estate of $46,250, "real estate sold on contract" amounting to $22,789.20, and bonds amounting to approximately $16,000.

The estate was regularly administered for a period of one year, whereupon the executor petitioned the probate court on the 21st day of September, 1959, for an order construing the will and for directions as to the disposition of real and personal property. Pursuant to said petition the order of the trial court construing the will includes the following perinent provisions:

"THE COURT FURTHER FINDS That under the joint, mutual and contractual will . . . *it was intended that upon the death of the survivor, all of the property of the decedents should be reduced to cash by the Executor as soon as possible without taking any unnecessary loss or losses,* except for . . . bonds which shall not be reduced to cash until the Executor is notified in writing by the Bishop to do so. That a Catholic hospital had not been built in Coffeyville, or within one mile of the city limits of Coffeyville, before the death of Elizabeth J. Roberts. . . .

. . . . . . . . . . . . .

"IT IS FURTHER ORDERED That the . . . Executor . . . be and it is hereby ordered and directed to sell all the real property described in the inventory . . . as soon as the same can be sold to the advantage of said estate." (Emphasis added.)

In August of 1960 the executor filed its petition for final settlement. It was stated therein that the executor had sold one of the four items of real estate shown by the inventory, but that the other three items of real estate:

". . . which real estate is a part of the residue of said estate *and which . . . Petitioner has been unable to sell without taking, what in the opinion of the Petitioner would be, unnecessary losses.* And that said real estate should be assigned to such person or persons entitled thereto as the Court finds may be entitled to the residue of said estate." (Emphasis added.)

The petition for final settlement further states:

". . . the residue . . . was bequeathed to the Bishop . . . to build a hospital of a general nature for the treatment of general diseases . . . to be built not later than two years after the death of the survivor . . . more than two years have passed . . . and . . . Executor . . . does not know and is in doubt whether the residue . . . should be distributed to the Bishop . . . or to the legal heirs of the decedent; that it is necessary that the Court construe the said will and the provisions; and determine who is entitled to the residue . . ."

One of the heirs at law of the decedent, Elizabeth J. Roberts, filed written defenses in the proceedings, and thereafter the appellants (Mark K. Carroll, Bishop of the Roman Catholic Diocese of Wichita, Kansas, and M. J. Gorges, Parish Priest of Holy Name Church of Coffeyville, Kansas) filed a written "Request for Transfer to District Court," as authorized by G. S. 1959 Supp., 59-2402a. Whereupon the matter was transferred to the district court for interpretation and construction of the will and determination of the heirs, devisees and legatees entitled to the remainder of the estate.

Subsequently the appellants in the district court filed a motion to make the Attorney General of Kansas an additional party on the ground that the heirs asserted the charitable trust had lapsed and that the Bishop had forfeited any claim to the residuary estate. The motion alleged:

". . . This challenge of the testamentary provisions constitutes an attack upon a public charitable legacy. The Attorney General is therefore a necessary party to this proceeding in the interests of the public."

On the 7th day of January, 1961, the motion, after argument to the trial court, was overruled.

The facts giving rise to this controversy are not in dispute. They

have been stipulated. It was agreed Holy Name Church at Coffeyville, Kansas, at all times material to this litigation was and is a part of the Diocese of Wichita; that the Bishop of the Diocese of Wichita did not build a hospital of a general nature for the treatment of general diseases within two years after the decease of the survivor of James A. Roberts and Elizabeth J. Roberts in the city of Coffeyville, or within one mile of the city of Coffeyville; and that no such institution was built prior to the death of Elizabeth J. Roberts.

Evidence set forth in the counter abstract of the appellees discloses that Mrs. Roberts was affiliated with the Roman Catholic Church all her life, and that Mr. Roberts did not have any affiliation; that he was a member of the Masons all of his adult life, took part in some of their ceremonies, and had some costumes and regalia which he wore on occasions. At his death funeral services were conducted at the home with a Presbyterian minister and Masonic bodies present, and that the Catholic Church did not handle the services in any way.

This evidence was argued to the trial court to show that Mr. and Mrs. Roberts were interested in building a local hospital in Coffeyville. Evidence was introduced to show that at the time the will was executed the hospital facilities in and around Coffeyville were very meager.

The controversy was submitted to the district court upon its merits on the 31st day of March, 1961, all parties in open court having entered into a stipulation as to the issue. The matter was taken under advisement and on the 1st day of September, 1961, the trial court determined that it was the intention of the testators that the bequest to the Bishop:

". . . was conditioned upon the existence of or the building of a Catholic hospital, . . . within one mile . . . of Coffeyville, . . . not later than two years after the death of the surviving testator."

The trial court found that more than two years had elapsed since the death of the surviving testator; that no hospital was built within one mile of Coffeyville within the two years following the death of the survivor as required by the will; that the trust created by Section IV of the will failed and lapsed by failure of the trustee to construct a hospital as required within a two-year period after July 15, 1958; and that the property which would have gone to the trust created by Section IV of the will descends to the heirs of the decedent, Elizabeth J. Roberts, as though she had died intestate.

Upon the foregoing findings the trial court:

". . . Ordered and Decreed that the trust created by Section IV of the will of James A. Roberts and Elizabeth J. Roberts fails and lapses by reason of the failure of the trustee to comply with the burdens, restrictions and conditions precedent to the establishment of said trust."

It further oraered and decreed that the property in question descended to and became the property of the heirs at law of Elizabeth J. Roberts, naming them, and the respective portion each was entitled to take. The relationship of the six heirs included one first cousin and five second cousins whose addresses indicated they were scattered all over the United States.

A motion for new trial was overruled and appeal was duly perfected to this court presenting the questions heretofore stated.

In support of the trial court's decision the appellees argue that the charitable trust created by the will was dependent upon two conditions: (1) That the assets of the estate be used for the construction of a Catholic hospital for the treatment of general diseases within the city of Coffeyville or within one mile of the corporate limits thereof; and (2) that this building be constructed not later than two years after the death of the survivor. The appellees argue almost four years have now expired since the death of the survivor and there has been no compliance with either condition. It is argued there was nothing to prevent the letting of a contract to build the hospital. They say: ". . . The testators intended that the executor hold the funds in the estate until the contract to construct the hospital was let. In so many words, the decedents stated in Section X of the will that no municipal, state, county, or United States bonds should be sold by the executor until 'the Bishop has let, or caused to be let, a contract for the building of said hospital.' Thus the construction of a hospital, within two years after the death of the survivor, was a condition precedent to the vesting of the trust estate."

In a will, a "condition precedent" exists when the performance thereof must of necessity precede the vesting of the gift, and a "condition subsequent" exists when failure or nonperformance works a forfeiture of an estate already vested. (*In re Fogel's Will*, 156 N. Y. S. 2d 739, 742.) A "condition precedent" is a fact which must exist or occur before a duty of immediate performance of a promise arises. (8 Words and Phrases, 1962 Pocket Part, p. 46; and see *Hawkins v. Hansen*, 92 Kan. 740, 142 Pac. 280.)

Briefly stated, the appellees' position is that the executor had no obligation and no authority or right to deliver the estate, or cash

the bonds and deliver the proceeds, until the Bishop had let a contract to build a hospital; and that it makes no practical difference whether the building of a hospital was a "condition precedent" or a "condition subsequent"—the facts are that no hospital has been built, no contract has been let for the building of the hospital, and the time for the building thereof has long since elapsed.

As usual, where the construction of a will is presented to a court, no precedent is available to give assistance upon the precise factual situation presented.

Charitable trusts are favorites of the law; they must be upheld whenever possible and, once it has been determined that the provisions of a will create a charitable trust, those provisions and others to be found in the instrument must be liberally construed for the purpose of carrying out the intention of the donor. Technical rules of construction, which have often prevented conveyances or bequests from taking effect, are disregarded. (*In re Estate of Porter*, 164 Kan. 92, 187 P. 2d 520; *In re Estate of Freshour*, 185 Kan. 434, 345 P. 2d 689, 81 A. L. R. 2d 806; and *Commercial National Bank v. Martin*, 185 Kan. 116, 340 P. 2d 899.)

There is no policy in this state to keep any class of property in a favored channel of inheritance as against a will, and when there is a will the presumption is against intestacy. (*In re Estate of Freshour*, supra, Syl. ¶ 4.)

When a court is called upon to determine the force and effect to be given the terms of a will, the cardinal rule of construction to which all other rules are subordinate is that the intention of the testator as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator. In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will, and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276; *Johnston v. Gibson*, 184 Kan. 109, 334 P. 2d 348; *In re Estate of Freshour*, supra; and cases cited therein.)

Other rules applicable to the construction of wills are stated in the case of *In re Estate of Freshour*, supra, and the authorities cited therein.

A careful analysis of the provisions of the will in question indicates that the condition imposed upon the Bishop has been impossible

to perform, at all times including the present, because of the failure of the executor to turn the moneys and funds over to the trustee. The will directed the Bishop to build the hospital, within the two-year period, *"with said moneys and funds"* (Paragraph V). The executor was *ordered* by the will to:

".   .   . reduce to cash, as soon as may be, without taking any unnecessary loss or losses, the property, real, personal, or mixed, which said executors shall receive under and by the terms of this will,   .   .   ." (Paragraph X.)

except the bonds which the executor was directed to hold until the Bishop had let, or caused to be let, a contract for the building of the hospital. (It must be observed these bonds represented less than one-sixth of the assets of the trust estate, and it is primarily upon this clause that the appellees rely to defeat the trust.) At the end of Paragraph X the will again directed that the executor *shall* reduce the properties, except bonds, to cash.

The probate court in construing the will, after the estate had been administered for one year, found it was intended by the will that the executor reduce the properties to cash, except for the bonds, without taking any unnecessary loss or losses, and thereupon extended the time of settlement to such time as may be necessary to complete the liquidation of the properties in the estate, not to exceed a period of one year. The order to sell the properties, however, was in accordance with the directions in the will—to sell as soon as the real property could be sold *to the advantage of the estate.*

When the petition for final settlement was filed, it was more than two years after the death of the survivor, *and three items of real estate remained unsold and in the hands of the executor.* This, of course, does not challenge the good faith of the executor in postponing sacrifice sales of the real estate. But the record does show the Bishop's inaction has been beyond his control.

As the facts developed in the administration of this estate, it is readily apparent there are two conflicting provisions in the will. One is that the Bishop build a hospital *with the moneys and funds* within two years after the death of the survivor, and the other is that the executor *reduce the properties to cash before making distribution of the same to the Bishop,* but he could not do this within two years by following the directions in the will and the orders of the probate court. Under these circumstances should the charitable bequest in trust to the Bishop fail? We think not.

A case somewhat analogous is *Fourth Nat'l Bank v. First Presby-terian Church,* 138 Kan. 102, 23 P. 2d 491. In that case Howard E. Case made a contract with the First Presbyterian Church for the erection of a memorial to Case's deceased wife. He deposited $100,-000 with the bank under an agreement whereby the church was to provide an equal amount. It provided:

" 'It is a further condition of this gift that the funds to be raised by said church shall have been raised by funds . . . or . . . pledges . . . and work on the commencement of the building of said structure started all within fifteen months from the date of this instrument, and in case these conditions shall not have been performed within that time, then the entire sum shall be paid and turned over to the trustees of the said trust estate of Howard E. Case and Sara Blair Case, and the said gift as herein provided shall fail.' " (p. 104.)

The contract and the $100,000 deposit were effected on November 13, 1930. Mr. Case died January 4, 1931. On March 30, 1931, the church certified to the bank the existence of acceptable pledges for its share of the funds. But on April 4, 1931, the bank filed an action to test the validity of the Case contract, there being a question whether it violated a trust provision under a joint and mutual will of Mr. and Mrs. Case. The litigation went to the Supreme Court, where the validity of the contract was upheld. (*Fourth Nat'l. Bank v. First Presbyterian Church,* 134 Kan. 643 7 P. 2d 81.) On return to the lower court new issues were made up, and, after decision, another appeal was taken from an order of the trial court holding that the failure of the church to begin the construction of the memorial within fifteen months deprived the church of the use of the money held by the bank to construct the building and barred it entirely from its use. Reversing the trial court a second time, the Supreme Court held:

"The question is presented whether the interference of appellees and the litigation has delayed the church and practically rendered performance impossible within the time stated in the contract, and whether such conduct estops them from invoking the rule of nonperformance which they occasioned. There is a well-recognized rule, 'That one who prevents a thing may not avail himself of the nonperformance which he has occasioned.' (*McDonald v. Wyant,* 167 Wash. 49.)" (p. 105.)

For general discussions of legal principles applying to conditional legacies, see 2A Bogert, Trusts and Trustees, § 420, p. 311; 3 Restatement, Trusts 2d, Appendix, § 401, p. 646; and the annota-

tion in 110 A. L. R. 1354. See, also, *Newcom, Administrator v. Potterf*, 182 Kan. 73, 318 P. 2d 1069.

The appellees rely upon *Salvation Army v. Watts*, 130 Kan. 714, 288 Pac. 764; and *Crowley v. Nixon*, 127 Kan. 178, 272 Pac. 104.

In the *Watts* case a bequest of $500, *to assist* the Salvation Army of Topeka in erecting a building for religious services and other purposes, was made in a will upon the express condition that actual building operations be commenced within two years after the testatrix's demise, *with a gift over upon failure of the bequest.* After the will was written, but before the death of the testatrix, the Salvation Army constructed a building for religious services and other purposes. Three years later the testatrix died. No building was commenced after her death. In the closing of her estate the Salvation Army contended it was entitled to the $500, but the court held, there being no compliance with an express condition of the will, the bequest failed.

Upon all the facts and conditions stated in the *Watts* case, we think it is distinguishable upon the ground that the Salvation Army undertook *to have the gift appropriated to pay for a building erected three years before her death,* and this did not fulfill the condition to commence the construction of a building within two years after her death. There the intention of the testatrix regarding the express condition was made clear by an additional provision reading: " ' . . . in case such building operations are not begun within two years after my demise, then this bequest shall fail and the sum bequeathed in this item become and be a part of my residuary estate.' " (p. 715.)

In *Crowley v. Nixon*, supra, the court struck down a devise of real estate because the devisee failed to perform certain conditions attached by the testator, that the devisee " 'shall pay within two years after my death' " (p. 178) certain sums of money to certain individuals. The court held the devisee was bound to perform within the two years, and having failed to do so, he lost title to the property. The will made other provisions for the disposition of this land in case the devisee " 'does not accept said farm upon the said terms' " (p. 178). The devisee was given his choice either to pay his own money to certain individuals or lose the devise of real estate. Since the money was not to come from the executor, the devisee was not controlled in his choice of conduct.

In the instant case it was clearly the intention of Mr. and Mrs.

Roberts, a childless couple, in their joint and mutual will to provide for the survivor of the two for the remainder of his or her life, and upon the death of the survivor, to provide that the assets of their estate be used to establish a hospital of a general nature for the treatment of general diseases in Coffeyville, Kansas, or within one mile of the corporate limits of the city. No provision was made in the event the charitable trust failed for any reason. Here the will by its terms disposed of all the decedents' property, and the presumption against intestacy prevails. It was not the intention expressed in the will to embarrass the Bishop, as trustee of the charitable trust, by requiring him to build the hospital as a condition precedent to the vesting of the trust assets. The direction and intention expressed in the will (Paragraph IV) was that all of their property should descend to and become the property of the Bishop, as trustee, immediately upon the death of the survivor of them, and *with said moneys and funds* he was to build the hospital. The reduction of the properties in the estate to cash was an administrative function delegated by directives in the will to the executor. This function of the executor was of secondary importance in the will. It was subordinate to the primary design of the will—the establishment of a hospital. Now, if the directives in the will which are secondary in nature are permitted to defeat the primary purpose of the will, clearly the intention of the makers of this will would be thwarted. Figuratively speaking, it would in substance permit the tail to wag the dog. (See annotation in 163 A. L. R. 1152, entitled "Absence of limitation over in event of nonperformance of condition as to conduct or obligation of devisee, legatee, or grantee, as affecting operation of condition.)

We therefore hold the charitable bequest to the Bishop in trust was an outright gift upon the death of the survivor, burdened with a condition subsequent—the building of a hospital *with said moneys and funds*, not later than two years after the distribution of said funds to the Bishop. Upon the facts and circumstances presented by the record herein the will has inconsistent provisions, and the primary purpose and design of the will cannot be defeated by a subordinate administrative provision. A reasonable construction demands that the time specified in the condition shall first begin to run after the moneys and funds, which flow from the assets that the executor was directed by the terms of the will to liquidate and reduce to cash, are distributed to the Bishop. Under these circum-

stances the expression "not later than two (2) years after the decease and demise of the survivor" is inaccurate, and is construed to mean "not later than two years after distribution of the moneys and funds to the trustee." This construction does not interfere with the provision concerning the sale or disposition of the bonds by the executor, although it may require holding the estate open until such time as the executor has completed its obligations under the terms of the will.

Was the Attorney General of Kansas a necessary party to this action?

The appellants contend it is obvious that the Roberts heirs challenge an attempted charitable trust, and in so doing they sought to diminish the interests of the people of Kansas. It is said the people are entitled to be represented herein through their Attorney General. The appellants rely upon 2A Bogert, Trusts and Trustees, § 411, pp. 263, 271; 2 Restatement, Trusts 2d, § 391f, p. 280; and 4 Yale L. J. 133.

The duties of the Attorney General of Kansas, in litigation, are set out in G. S. 1949, 75-702, which provides:

"The attorney general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party, and shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any other court or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested."

Nothing can be found in the statutes of Kansas making the Attorney General of Kansas a necessary party in the probate court or the district court in proceedings relative to wills creating charitable trusts. A similar question confronted the Kentucky Court of Appeals in *Commonwealth v. Gardner,* 327 S. W. 2d 947, 74 A. L. R. 2d 1059. There, however, the Attorney General of the state of Kentucky sought to intervene in a will contest involving a charitable trust, but his motion to intervene was denied. The Kentucky court said:

". . . We have no statutory enactment in this state with respect to his rights and duties concerning the administration of established charities and charitable trusts. By decisions of this court the Attorney General has power to supervise the administration of such established trusts, to prevent the mismanagement and waste of the trust fund, to remedy malfeasance by trustees, and to see that the purposes of the trusts are carried out. . . .

". . . In addition, the imposition on the Attorney General of the duty of defending all will contests arising in Kentucky that in any way involve

charities or a charitable trust would unduly augment the many duties with which he is now burdened, to say nothing of the additional cost and expense thereof to the Commonwealth. The truth of this is recognized by the Attorney General through the insistence in his brief that he is under no duty to defend such contests, but has or should have the right and election to defend only such of them as he may see fit. . . ." (pp. 948, 949.)

It has been said by this court in *Troutman v. DeBoissiere*, 66 Kan. 1, 71 Pac. 286, the Attorney General has the right to intervene in the event funds of a public charity are in danger of being lost or are being poorly administered to protect the estate.

We hold the Attorney General of Kansas was not a necessary party in the proceedings in the district court designed to contest the validity of the charitable trust herein.

The judgment of the lower court is reversed.