64 Wn.2d 703 (1964)
393 P.2d 940
In the Matter of the Estate of EDNA M. FRANCE, Deceased.
CATHOLIC CHARITIES, Appellant,
v.
SACRED HEART VILLA, Respondents.[*]
No. 37139.
The Supreme Court of Washington, Department Two.
July 2, 1964.
John Spiller, for appellant.
Cadwell F. Corrigan, for respondent.
EDGERTON, J.[]
The will of Edna M. France, executed February 4, 1960, and admitted to probate March 7, 1960, the same day she died, contained this provision:
"I bequeath unto the Washington Children's Home the sum of $1,000, and I bequeath unto Sacred Heart Children's Home the sum of $1,000."
At the time of testatrix's death, there was not in Seattle, nor had there been, an institution named Sacred Heart Children's Home. However, there was one called Sacred Heart Villa which, prior to 1951, had the name Sacred Heart Villa and St. Paul's Infants' Home. To some it was *704 known as Sacred Heart Orphanage, or Sacred Heart Children's Home or Sacred Heart Orphanage and St. Paul's Infants' Home. Throughout its existence, it has been operated by the Missionary Sisters of the Sacred Heart. Early in the course of administering the estate, the executor gave notice of the bequest to Sacred Heart Villa and then later also informed Catholic Charities about it. This latter is the corporate head of the Roman Catholic social service agencies.
In March, 1963, Catholic Charities made claim against the estate for the $1,000 bequest alleging the decedent intended a gift for the care, maintenance and support of orphan children rather than a gift to Sacred Heart Villa. Claimant contended it should receive the sum for its division of Catholic Children's Services to be used in charitable work of caring for, maintaining and supporting orphaned and dependent children.
When the claim was presented at the hearing on the executor's final report and account, it was contended that the name of the beneficiary used in the will was a mistake and so created a latent ambiguity which might be cured by parol testimony. The trial court held that, though there was an inaccuracy in the name employed in the will, the institution which testatrix had in mind was identified, there was no latent ambiguity and Sacred Heart Villa was entitled to the bequest. Hence, the decree of distribution made March 22, 1963, directed the executor to pay $1,000 to Sacred Heart Villa.
Briefly the history is that, before 1951, Sacred Heart Villa and St. Paul's Infants' Home was both school and orphanage. After 1951, it became simply Sacred Heart Villa; the orphanage feature of its program was removed from it and its services to orphans were gradually transferred to Catholic Children's Services. This latter agency then placed these children in foster homes and later operated two small groups which now function as St. Paul's Children's Home, Units One and Two. (Evidence as to these facts was received over the objection that it was offered to vary the terms of the will.)
*705 Long before any of these changes occurred, testatrix had left Seattle to live in Aberdeen. There she remained until about 1955, when she returned to Seattle. Due to her defective vision and the need for relying on others for information, it is represented that she was unaware of changes in the functions of Sacred Heart Villa that had occurred during her absence.
The executor was permitted to testify that he had heard testatrix say from time to time, and specifically when she "dictated this will" to the lawyer who drafted it, that she wanted to give equal sums to Catholic and Protestant agencies for orphans, and particularly
"I think the problem is ... her failure to realize that the organization which she knew as the Sacred Heart Children's Home, in effect, no longer existed in Seattle, and that the orphan type work had been taken over by another agency."
[1] Thus it is clear the executor, the only witness on this point, believed, as the trial judge held, that the institution the testatrix had in mind was identified. Once that identity was definitely established, that Sacred Heart Children's Home and Sacred Heart Villa were the same, no latent ambiguity remained, and the fact that "she may have thought, at the time, she was going to leave this bequest to an institution that might be dealing with orphan children" and did not know this was no longer a function of that institution she had in mind, does not empower the court to rewrite her will. So ruled the trial judge. The law supports this view.
The text writers of American Jurisprudence thus define latent ambiguity and explain when parol or extrinsic evidence may be received to clear it:
"Strictly, a latent ambiguity is one which is necessarily raised or discovered in attempting to apply the instrument to the persons or things to which it relates. And, unless the rule against adding to or varying a will by extrinsic evidence is to be abrogated altogether, the admission of such evidence must be restricted to cases in which the ambiguity or equivocation appears upon the bare application of the *706 will to the extrinsic facts, with the aid of only such extrinsic evidence as is necessary to apply or execute it in this way. To admit evidence of circumstances or declarations which would cast doubt upon the meaning of a provision of a will, or to show that it means something different from the ordinary intendment of its words as applied to the persons and property to which it relates, is to permit it to be varied or added to by parol evidence.
"It is frequently stated as a corollary of the broad doctrine that extrinsic evidence is not competent to vary or add to terms of a will, that an unintentional or inadvertent omission of a provision, word, or name intended to be inserted in a will cannot be shown or supplied by such evidence, in a proceeding involving the construction of the will, where there is no fraud. Extrinsic evidence, in other words, is not generally competent to show or correct a mistake in an unambiguous will which is before the court for interpretation, since the evidence in such a situation would operate to contradict the will, or, as one court graphically puts it, `parol evidence is not admissible to show that the testator meant one thing when he said another.'" (Italics ours.) 57 Am. Jur. §§ 1044, 1045, p. 679
To the same effect are the definitions of ambiguity and latent ambiguity contained in Black's Law Dictionary (4th ed.) and Bouvier's Law Dictionary, Rawle's Third Revision.
With these definitions and this rule the Washington cases and statute are in accord. See, In re Lee's Estate, 49 Wn. (2d) 254, 299 P. (2d) 1066; In re Robinson's Estate, 46 Wn. (2d) 298, 280 P. (2d) 676; In re Levas' Estate, 33 Wn. (2d) 530, 206 P. (2d) 482; De La Pole v. Lindley, 118 Wash. 398, 204 Pac. 15; Siegley v. Simpson, 73 Wash. 69, 131 Pac. 479; RCW 11.12.230.
While in the case of In re Wilson's Estate, 111 Wash. 491, 493, 191 Pac. 615, this court did say: "... where there is an ambiguity, such as the misnomer here, extrinsic evidence is admitted to show the real intent of the testator," there is no conflict with the instant case. For in the cited case, the misnomer was a complete mistake and no identity could be determined within the four corners of the will. Consequently, resort to extrinsic evidence to ascertain the meaning of the testator was essential. Here, identity of the beneficiary was embraced within the language of the will *707 and only verification was proper. The institution designated was known to be within the knowledge and general neighborhood of testatrix. Testatrix's slightly erroneous dictation of the name does not present the problem of a choice between two possible meanings. Rather, the simple question is, was Sacred Heart Villa the institution testatrix had in contemplation when she said "Sacred Heart Children's Home." The evidence says that it was.
[2] Even if it is assumed that evidence could be adduced to prove a contrary intent on the part of the testatrix, effect could be given it only where the language of the will would admit such construction. In re Lee's Estate, supra. Quite palpably here it does not. Even though we assume that testatrix did not know Sacred Heart Villa was no longer an orphanage, we can only speculate as to whether or not, had she known, she might have made a different disposition. It is not for the court to rewrite the will or to guess at what testatrix might have wished to do had she had more information.
The judgment is affirmed.
OTT, C.J., HILL, WEAVER, and HALE, JJ., concur.
NOTES
[*] Reported in 393 P. (2d) 940.
[] Judge Edgerton is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.