No. 23152.

Duke W. Dunbar, Attorney General, State of Colorado v. The Board of Trustees of George W. Clayton College; The George W. Clayton Trust Commission; and The City and County of Denver.

(461 P.2d 28)

Decided November 10, 1969.

328

DUKE W. DUNBAR, Attorney General, JOHN E. BUSH, Assistant, for plaintiff in error.

WILLIAMS, ERICKSON & WALLACE, ALEX B. HOLLAND, WESTEL B. WALLACE, for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS is an appeal from an order in the Denver Probate Court granting a petition for the application of the rule of *cy pres* filed jointly by the Board of Trustees of George W. Clayton College and the George W. Clayton Trust Commission. George W. Clayton College has, since shortly after the death of its founder in 1899, provided institutional care for qualified Colorado orphans. The will of George W. Clayton, which provides for the establishment of Clayton College, restricts the eligibility of applicants to those who are poor, white, male orphans between the ages of 6 and 10, an orphan being defined as one whose father is dead. The petition alleged that the restrictions on admission of applicants imposed by the will are, in part, illegal and impracticable in light of the testator's general charitable purpose.

After a hearing, at which the proposed changes were opposed by the Attorney General, the trial judge concluded that the testator was motivated by a general

charitable intention, that the racial restriction is illegal and incapable of enforcement, that changing conditions not existing at the time the will was executed have rendered adherence to the admissions restrictions impracticable, and that this is a proper case for the application of the doctrine of *cy pres*. The trial court entered an order permitting the petitioners to admit children regardless of color and between the ages of 6 and 18 who have been deprived of parental care and/or support by reason of the death of either parent or who are otherwise in need of the care and training provided by Clayton College because the parent or parents of such child either cannot or are unwilling to provide such care and training.

The Attorney General argues that the facts fail to establish that it is presently impracticable to administer the trust under the terms of the Clayton will, and that the trial judge erroneously relied upon facts which may exist in the future in arriving at his decision. We do not agree and, therefore, affirm the decision of the trial court.

I.

It is proper to note at this time that the Attorney General does not contend that the trial judge was in error in ruling that the racial restriction on admissions is illegal and therefore unenforceable. It is clear that the method of operation of Clayton College under the terms of the Clayton will involved "state" action within the meaning of the Fourteenth Amendment to the Constitution of the United States. The trial court's finding that the racial restriction must be stricken is in harmony with recent authoritative determinations and is correct. *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373; *Commonwealth of Pa. v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792; *Commonwealth of Pa. v. Brown,* 373 F.2d 771 (3rd Cir. 1967); *In Re Girard College Trusteeship,* 391 Pa. 434, 138 A.2d 844.

II.

The trial court found that continued operation of Clay-

ton College under the restrictions limiting admission to impoverished orphans between 6 and 10 years of age is impracticable in the light of present conditions and applied the doctrine of *cy pres.* The Attorney General contends that the evidence does not support such a finding.

■ The doctrine of *cy pres* is set forth as follows in the *Restatement (Second) of Trusts* § 399 (1959):

"If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

In this case, there is no disagreement with the finding of the trial judge that the testator was motivated by a general charitable intention. Likewise, it is not contended that the new policy on the eligibility of applicants contained in the order of the trial court fails to fall within the general charitable intention of the settlor. The only question with which we are concerned is whether the facts support the conclusion of the trial judge that it is impracticable to continue to administer the trust subject to the admissions requirements contained in the will.

■ A purpose becomes impracticable when it appears that under the circumstances the application of the property to that designated purpose would fail to accomplish the general charitable intention of the testator. *Restatement (Second) of Trusts* § 399 comment q; *A. Scott, Trusts,* § 399.4 (3rd ed. 1967).

■ The rule is well established in this Court that the findings of the trial court will not be disturbed on review if they are supported by competent evidence in the record. We are especially reluctant to interject our conclusions for those of the trial court in a situation such as this one where the court and the judge have a special familiarity with the issue. The Probate Court (formerly the County

Court) of the City and County of Denver has had continuing jurisdiction over the Clayton Trust since the time of its inception.

In his findings of fact, the trial judge found the general charitable intention of the testator to be as follows:

"In reviewing the will of George W. Clayton, it is the Court's finding that Mr. Clayton wanted a large and evergrowing college, maintained in perpetuity, at all times using the name 'George W. Clayton College,' to the end that the greatest possible good might be derived from his bequest. His will invites contributions to the trust from other generous people. The language of the will and the testamentary pattern therein entails evidence that the dominant wish and purpose of George W. Clayton was that the City of Denver serve in perpetuity as trustee, without compensation to those persons who as for the City, in order that the greatest possible good in fact be accomplished; that his dominant wish and purpose greatly overweighs the language relating to the limitation of eligible beneficiaries contained in the will; and that in making his will the testator had and so demonstrated a general charitable intent."

Summarizing the comments of the trial judge noted above, we find it fair to say that the general charitable intention of George W. Clayton was to create a perpetual and growing institution bearing his name for the purpose of doing the greatest possible good for the children of the State of Colorado who are without adequate parental care.

The record on appeal adequately supports the conclusion of the trial court that the operation of Clayton College according to the present restrictions on admissions fails to accomplish the general charitable intention of Mr. Clayton. It is clear from the record that today, despite the increasing population of the State of Colorado, the number of qualified applicants for the college under the restricted admission requirements is constantly declining. The evidence showed that although the present

program at the college is an excellent one, it had to advertise for applicants by radio and television. The evidence further showed that the social welfare services in the area were not referring potential admittees to the college.

The reason for this unusual situation becomes clear when we examine the evidence given by the authorities on child welfare practice of today who appeared to testify. The Executive Director of the Child Welfare League of America, Mr. Joseph Reid, testified that today the prevalent trend in child welfare work is to try to place children who are between the ages of 6 and 10 in individual foster homes or provide the means necessary for the parents to retain the child in the home. It is generally only the older child, the one who cannot adjust to a home atmosphere, who is recommended for open institutional care such as is offered by Clayton College. This is in sharp contrast to the situation when George Clayton wrote his will in the early 1890's. At that time, Mr. Reid pointed out, children of 12 or older were bread winners and were financial assets in the fatherless home. It was the poor orphan of the pre-teen group who was the liability, and there was at that time only one public institution in the state where such children were cared for. Also, it appears from the record that in the 1890s the main source of needy children was from homes where the father had died. Such deaths of fathers where the homes contained very young children were much more prevalent than today because of lower safety standards and higher disease rates then existing.

The evidence given by Betty Johnson, Supervisor of Services to Children and Youth in the Denver Welfare Department, was that today only 3.4% of the children eligible for aid to dependent children are so eligible because of the death of the father. Testimony by the experts also indicates that the overwhelmingly greatest need at present relates not to the care of children within the specific age groups whose fathers are dead, but relates

to the care of other children, often older, who have been deprived of parental care for such reasons as divorce, separation or desertion by the father. Moreover, it is pointed out by Miss Johnson and Mr. Reid that poverty of the family is now almost nonexistent as a reason for institutionalizing children. Our enlightened society has devised other means for helping poor families than breaking up the home.

We would point out that Clayton College has already, by earlier court decree, been permitted to supplement custodial care with a full panoply of aid to disturbed children by way of individual and environmental therapy.

The evidence, as we have sketchily summarized it, is not challenged by the Attorney General. His argument is that the evidence in the record reveals that Clayton College is presently operating at an optimum level with all available income being expanded to maintain and support the existing program. He argues that it is error to say that the operation of Clayton College under the provisions in the will fails to accomplish the general charitable intention of the testator until such time as student facilities are unused and surplus funds are available.

In order for this Court to accept the argument presented by the Attorney General not only would we have to ignore the fact that Clayton College has failed to grow and is not presently doing the greatest good for children who are without parental care, but we would have to ignore the practical aspects of the administration of Clayton College as well. We are conscious of the warning by Auston Wakefield Scott in his monumental work on Trusts:

"It is believed that the courts have not infrequently been too reluctant to permit a deviation from the directions of the testator. The result of a too strict adherence to the words of the testator often means the defeat rather than the accomplishment of his ultimate purpose. He intends to make the property useful to mankind, and to render it

useless is to defeat his intention." *A. Scott, Trusts,* Vol. 4, p. 3123 ff.

We would be less than candid if we did not state that many jurisdictions still equate the word "impracticable" with the word "impossible" when dealing with the *cy pres* doctrine. We think this is an unenlightened view. We prefer to follow the philosophy of Professor Scott as quoted above.

■ As we have pointed out, there is very strong evidence in the record to the effect that there is a decreasing need to make the facilities of Clayton College available to the class of children defined by Mr. Clayton in 1892. The court specifically found, and we agree, that continued adherence to the settlor's restrictions would insure, in time, the obsolescence of this institution. It is not necessary that it become finally impossible to further administer the college in exact compliance with the wishes of the testator. Where, as here, it is evident to the trial court that the operation of the trust has failed to fulfill the general charitable intention of the settlor, and the only possibility is that the situation will become worse in the future, the court is justified in applying the doctrine of *cy pres* on the basis of impracticability.

There is some argument that the request for the expansion of admissions restrictions is premature because the income available at the present time is completely used by the college in its present operation. An institution such as Clayton College must have an opportunity to plan its growth and development. The college has a great deal of property which can generate more income than is presently available. Testimony in the record indicates that more profitable use will soon be made of some of the property held by the Clayton Trust Commission. This could release as much as three million dollars in the next ten years for investment. But there is no use in planning for such an increase in income if it cannot be used, and the testimony is clear that it cannot be used under present restrictive admissions policies. It is necessary that the

institution know how the increased income from this money may be utilized. The trial judge had this need for planning in mind when he specified in his order that changes in the operating procedure of Clayton College would be made only within the financial and plant capabilities of the trust. We do not here decide that the potential for increased income is a factor to justify the application of *cy pres*. We discussed the matter only to meet the argument of prematurity.

We read into the order of the trial judge the understanding that the facilities of the college will always be available, on a first priority basis, to those who are qualified as beneficiaries under the original restrictions in Mr. Clayton's will except the restriction dealing with race. The change ordered by the trial judge is only to avoid the eventual destruction of Clayton College and to insure its continued growth and social utility, a situation which the trial court found was the clearly expressed intention of George Clayton. Were we to prevent the growth and the opportunity for expanding social service to this community which the trial court's judgment would provide for Clayton College, we would, in our opinion, stultify rather than carry out George Clayton's wishes.

We note that there is nothing in *Moore v. Denver*, 133 Colo. 190, 292 P.2d 986, that would compel us to reach a different result. That case involved a petition for construction and instructions concerning the Clayton Trust, and we expressly noted that the court had not been asked to apply the doctrine of *cy pres*. Because *cy pres* was not an issue and this Court did not have before it testimony and arguments of counsel on that doctrine, anything the court had to say on that subject was, at best, dicta.

The judgment is affirmed.