In the Matter of the Estate of MALLIE CARPER, Also Known as AMELIA CARPER, Deceased. ROSE PRICE et al., Respondents; ULTIMATE CHARITABLE BENEFICIARIES, Appellants.

Fourth Department, April 13, 1979

APPEARANCES OF COUNSEL

*Robert Abrams,* Attorney-General *(Thomas Fernandes, Samuel A. Hirshowitz* and *Warren Goidel* of counsel), for ultimate charitable beneficiaries, appellants.

*Wayne I. Ohl* for respondents.

**OPINION OF THE COURT**

Moule, J.

Testatrix died in October 1976 leaving a last will and testament dated July 2, 1975 which revoked all former wills, provided for the payment of debts, funeral expenses and taxes, and made eight bequests to relatives and neighbors totaling approximately $80,500. Paragraph TWELFTH of her will provided "all the rest, residue and remainder of my property, both real and personal and of whatsoever name and nature and wheresoever situate, I give, devise and bequeath unto my beloved sister, Rose Price and her husband, Hyman Price, to be used by them in their sole discretion for the purpose of establishing in a charitable institution, or institutions, memorials to the fond memory of our parents, Abraham Schriba and Esther Gertrude Schriba, and my late husband, Frank Carper, in such manner and to such extent as I shall make known to them."

In March 1978 Rose Price and Robert O'Brien, coexecutors of the estate, petitioned Surrogate's Court, Monroe County, pursuant to SCPA 1420 for a determination as to the validity,

construction and effect of paragraph TWELFTH of testatrix' will. Their petition asserted that paragraph TWELFTH is ambiguous, that testatrix died in partial intestacy and that the balance of the residuary estate should be distributed among testatrix' intestate distributees pursuant to EPTL 4-1.1. Appended to the petition are affidavits of Rose Price and Hyman Price which state that the only direction testatrix gave to them concerning memorials was an oral communication that she wished memorials for her parents and husband to be established at the Jewish Home and Infirmary in Rochester, New York, in the approximate amount of $25,000. In addition, the petition contained an agreement whereby decedent's distributees agreed to a proportionate distribution of amounts passing by intestacy.

The Attorney-General of the State of New York, as attorney for unnamed charitable beneficiaries, filed an answer contending that paragraph TWELFTH evinces a general charitable intent and that the court is authorized by EPTL 8-1.1 to apply the cy pres doctrine to designate charitable beneficiaries for the residue of testatrix' estate. In addition, the Attorney-General asserted that the affidavits of Rose and Hyman Price should be stricken from the petition inasmuch as Rose Price, a distributee of testatrix, was interested in the outcome and her affidavit concerning conversations with testatrix thus violated the Dead Man's Statute (CPLR 4519).

Subsequently, petitioner Rose Price applied to the Surrogate for an order extending her time to file and serve a renunciation of her intestate share so that her affidavit concerning conversations with testatrix would not be barred by the Dead Man's Statute. The Surrogate found that paragraph TWELFTH was ambiguous as to testatrix' intent and that extrinsic evidence was admissible to clarify her intent. The Surrogate also found that these circumstances provided sufficient reasonable cause to grant Rose Price an extension of time in which to file her renunciation. On the basis of the will and the affidavits of Rose and Hyman Price the Surrogate held as a matter of law that there was no clear unambiguous language indicating a general charitable purpose and that the language of the will together with extrinsic evidence established that decedent's intent was to create memorials of a private nature. The Surrogate concluded that testatrix died partially intestate under paragraph TWELFTH of her will and "shall be deemed to have died testate as to the extent of $25,000 which shall be

directed to the Jewish Home and Infirmary in Rochester, New York."

On appeal the Attorney-General reiterates his contention that paragraph TWELFTH of decedent's will evinces a general charitable intent and that the Surrogate should have applied cy pres to designate various charities to receive the gift.

■ ■ The primary duty of the court is to find and implement the intention of the testator as it is manifested in the language of the will *(Matter of Jones,* 38 NY2d 189). Where gifts to charity are involved, several additional rules of construction are relevant. When a testator evinces a charitable intent, it will be given effect by application of liberal rules of construction *(Matter of Nurse,* 35 NY2d 381). Charitable trusts do not need the same degree of certainty as to the beneficiaries that other gifts do *(Allen v Stevens,* 161 NY 122), and a charitable gift should be sustained whenever possible under the cy pres doctrine in the light of the intention of the testator *(Matter of Kirkbride,* 261 App Div 853).

EPTL 8-1.1 (subd [a]), the statutory enactment of the cy pres doctrine, provides that: "No disposition of property for religious, charitable, educational or benevolent purposes, otherwise valid under the laws of this state, is invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries." A gift in trust to be distributed among various charities as the trustee sees fit is a valid charitable gift *(Matter of Cunningham,* 206 NY 601; *Matter of Michaels,* 7 Misc 2d 439; *Matter of Olmstead,* 131 Misc 238). Furthermore, cy pres may be applied even in the absence of a properly created express trust (see *Matter of Durbrow,* 245 NY 469), and gifts to charities are valid charitable gifts despite being motivated by a testator's desire to perpetuate his name or the names of family members *(Matter of Scott,* 8 NY2d 419, 427; *City Bank Farmers Trust Co. v Arnold,* 268 NY 297, 301; *Sherman v Richmond Hose Co., No. 2,* 230 NY 462, 469). Therefore, failure to designate specific charitable institutions is not fatal.

The narrow question that we must decide is the effect of the language "in such manner and to such extent as I shall make known to them" upon the rest of paragraph TWELFTH which devises the residue of testatrix' estate to Rose and Hyman Price to be used in their sole discretion for the purpose of establishing memorials in various charitable institutions. Petitioners argue that the quoted language conflicts with the

language giving Rose and Hyman Price "sole discretion" and thus makes testatrix' charitable intent ambiguous. The Attorney-General contends that the quoted language modifies "memorials" and expresses testatrix' desire to provide details in the future concerning the types of memorials to be established rather than a desire to modify her intent that the residue be given to charities.

We believe that paragraph TWELFTH of the will evidences a general charitable intent. The language at the end of paragraph TWELFTH modifies "memorials" and indicates testatrix' intent to supply, at a later date, details concerning the types of memorials that she wished established in charitable institutions. This intent to supply details does not conflict with her over-all intent that the residue be distributed among various charities in memory of her late husband and parents. This conclusion is supported by several factors. First, the will as a whole evidences a comprehensive plan of distribution. Testatrix bequeathed approximately $80,500 among various relatives and friends. The rest testatrix gave to her sister and brother-in-law to be given to charity. Had testatrix intended to make bequests to all of her intestate distributees, she would have done so. Second, there is no provision in paragraph TWELFTH directing what should be done with any amounts not given to charity. Lack of a gift over is evidence of a general charitable intent (see *Matter of Clark,* 1 Misc 2d 869; 9B Rohan, NY Civ Prac, par 8-1.1[5][6]). Third, the phrase "in such manner and to what extent as I shall make known to them" follows the language describing the memorials and logically modifies it rather than the language in the sentence which makes the bequest to the Prices "to be used by them in their sole discretion."

Inasmuch as testatrix' general charitable intent is clear and unambiguous, the Surrogate should have applied EPTL 8-1.1 to give effect to that intent. The Surrogate's holding that testatrix did not have a general charitable intent and that testatrix died intestate except to the extent of a $25,000 bequest to the Jewish Home was erroneous. Furthermore, the Surrogate's determination that paragraph TWELFTH was ambiguous and his admission into evidence of the affidavits of Rose and Hyman Price for the purpose of "clarifying" testatrix' intent was also erroneous. Testatrix' oral statements to Rose and Hyman Price, made after the execution of the will, cannot be incorporated into the will by reference *(Booth v Baptist*

*Church of Christ of Poughkeepsie,* 126 NY 215; *President & Directors of Manhattan Co. v Janowitz,* 260 App Div 174, mod 260 App Div 954). However, this does not invalidate the testatrix' general charitable intent, which will be given effect by the application of EPTL 8-1.1.*

The Attorney-General's second contention is that the Surrogate erred in granting an extension of time for the filing of Rose Price's renunciation of her intestate share. It is unnecessary for us to reach this contention. The conclusion that paragraph TWELFTH is unambiguous insofar as it manifests testatrix' general charitable intent makes unnecessary the consideration of extrinsic evidence, and the application of cy pres to designate beneficiaries of the charitable gifts prevents any of the residue of testatrix' estate from passing by intestacy.

The Surrogate's decree should be reversed and paragraph TWELFTH of testatrix' will held to be a valid charitable gift. The case should be remitted to the Surrogate to enter an order directing Rose and Hyman Price to designate a charitable institution or institutions for the receipt of the gift or gifts. In the event that they are unable to designate appropriate charitable institutions, the Surrogate should excerise his powers under EPTL 8-1.1.

DILLON, P. J., CARDAMONE, SIMONS and DOERR, JJ., concur.

Decree unanimously reversed, without costs, paragraph TWELFTH of will held to be a valid charitable gift and matter. remitted to Monroe County Surrogate's Court for futher proceedings in accordance with opinion by MOULE, J.

---

* The record contains a letter from the Jewish Home and Infirmary of Rochester which indicates that the Prices have arranged for the purchase of memorials in that institution. In light of the circumstances, this is an appropriate disposition of $25,000 of the residue and may be approved by the Surrogate.