**In the Matter of the Trust of Nita GERBER and Donna Gerber, Trustors.**

No. 17831.

Supreme Court of Utah.

Aug. 26, 1982.

Nolan J. Olsen, Midvale, for appellant.

David E. Salisbury, Richard H. Johnson, II and Samuel O. Gaufin, of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for Intermountain Medical Center, etc.

Frank Armstrong, Salt Lake City, for Zions Bank.

HALL, Chief Justice:

Appellants, heirs of Nita and Donna Gerber, contest an order of the trial court which distributes a trust created by the Gerbers in 1960. The trial court's order awarded specific gifts to each of appellants from the trust fund and divided the residue equally between Shriners' Hospital for Crippled Children and Intermountain Health Care, Inc. (IHC). Appellants object to the portion of the order which allocates trust money to IHC.

The residuary clause of the Gerber trust instrument reads:

The entire trust estate remaining, principal and income, [shall be paid] in equal shares to the Shriner's Hospital for Crippled Children, a corporation of Colorado, for the exclusive use and benefit of its Intermountain Unit located at Salt Lake City, Utah and to the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints, a corporation sole, for the use and benefit of the Children's Latter-Day Saints Hospital.

At the time of the creation of the trust in question, no "Children's Latter-Day Saints Hospital" existed, but the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints (LDS Church) owned and operated a single children's hospital known as Primary Children's Hospital. This hospital and the Shriners' Hospital for Crippled Children named in the residuary clause of the trust were then and are now the only children's hospitals in the Salt Lake City area, where the trust instrument was signed.

In 1975, the LDS Church relinquished control of Primary Children's Hospital to IHC, a nonprofit corporation formed for the purpose of administering a number of hospitals formerly owned by that church. At that time, Primary Children's Hospital was renamed "Primary Children's Medical Center." Primary Children's Medical Center continued to occupy the same premises and to provide the same services to children as it had before the change.

Appellants argue that because the LDS Church no longer operates a children's hospital, it is impossible to carry out the intent of the trustors to make a gift "to the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ... for the use and benefit of the Children's Latter-Day Saints Hospital." They reason that because the trustors expressed a specific intention to benefit the children's hospital through their gift and because the designated administrator of the gift is now incapable of using the gift for that purpose, the attempted gift must lapse for failure of purpose. The trial court did not adopt this view, but rather awarded one-half of the trust residue to IHC to be used for the benefit of Primary Children's Medical Center.

■ The primary object of a court, in construing the provisions of a trust, is to carry out the intent of the trustor or trustors. This Court has stated:

The general rules of construction of written instruments apply to the construction of trust instruments, and those rules require a determination of the intention of the settlor where the creation of the trust is a unilateral matter.[1] [Footnote omitted.]

■ A second generally recognized principle of construction is the presumption in favor of charitable dispositions of property, expressed by one court as follows:

Charitable trusts are favorites of the law; they must be upheld whenever possible and, once it has been determined that the provisions of a will create a charitable trust, those provisions and others to be found in the instrument must be liberally construed for the purpose of carrying out the intention of the donor. Technical rules of construction, which have often prevented conveyances or bequests from taking effect, are disregarded.[2]

The Utah Legislature, in enacting the Charitable Trusts Act of 1971, expressed its approval of the latter principle of construction, declaring:

This act shall be interpreted to effectuate the intent of the state of Utah to preserve, foster, and encourage gifts to or for the benefit of charitable organizations.[3]

The time-honored doctrine of *cy pres*[4] embodies both of the above rules of construction by providing a means for implementation of a trustor's charitable purposes in cases where a court cannot precisely follow the trustor's instructions regarding the means of accomplishing such purposes. In 1889, the United States Supreme Court expressed the *cy pres* doctrine as follows:

[W]here property has been devoted to a public or charitable use which cannot be carried out on account of some illegality in, or failure of the object, it does not, according to the general law of charities, revert to the donor or his heirs, or other representatives, but is applied under the direction of the courts, or of the supreme power in the State, to other charitable objects lawful in their character, but corresponding, as near as may be to the original intention of the donor.[5]

A Kansas appellate court recently explained the concept which underlies the doctrine:

The fundamental concept of the doctrine is that a donor may have a general charitable intent, and that the particular charitable institution he has designated as recipient of the gift is only an agent for effectuating that gift. Therefore, when it becomes impossible for the gift to take

1. *Makoff v. Makoff,* Utah, 528 P.2d 797, 798 (1974).

2. *In re Estate of Roberts,* 190 Kan. 248, 255, 373 P.2d 165, 171 (1962). See *State v. Coerver,* 100 Ariz. 135, 412 P.2d 259 (1966); *Estate of Daley,* 6 Ariz.App. 443, 433 P.2d 296 (1967); *In re Estate of Lamb,* 19 Cal.App.3d 859, 97 Cal. Rptr. 46 (1971); *First National Bank of Chicago v. King Edward's Hospital Fund for London,* 1 Ill.App.2d 338, 117 N.E.2d 656 (1954).

3. U.C.A., 1953, 59–23–12.

4. The term *cy pres* derives from the Norman French phrase *cy pres comme possible,* which translates, "as near as possible." *Ironmongers Co. v. Attorney General,* 10 Cl. & F. 908, 922, Bogert, The Law of Trusts & Trustees, § 431 (Revised 2d ed. 1977). Courts have applied the *cy pres* principle since the third century A.D. when the celebrated jurist Modestinus was called upon to dispose of a legacy which had been designated for the unlawful purpose of celebrating public "games" in memory of the dead. Modestinus declared,

Since the testator wished games to be celebrated which are not permitted, it would be unjust that the amount which he has destined to that end should go back to the heirs. Therefore let the heirs and magnates of the city be cited, and let an examination be made to ascertain how the trust may be employed so that the memory of the deceased may be preserved in some other and lawful manner.

*Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. United States,* 136 U.S. 1, 52, 10 S.Ct. 792, 806, 34 L.Ed. 478 (1890). Early French, Spanish and English courts made extensive use of the *cy pres* doctrine. *Id.* at 52–56, 10 S.Ct. at 806–808.

5. *Id.* at 56, 10 S.Ct. 807.

effect exactly as the donor specified, the court must look for another agent, as nearly like the designated one as possible, that will receive the gift and effectuate the general charitable intent expressed in the will or gift instrument.[6]

Most American courts recognize and adhere to the *cy pres* principle.[7]

The Utah Supreme Court, in 1892, recognized the *cy pres* doctrine as a means of accomplishing the intent of a donor of property, declaring:

> The doctrine of *cy pres* is only a liberal rule of construction to ascertain the intention of the donor, and all the rules relating thereto are intended to aid in ascertaining and carrying out, as nearly as may be, the true intention of the donor. His intention should be the aim of the court.[8]

In that case, the Court quoted the following characterization of the doctrine from a Pennsylvania case:

> In all gifts for charitable uses the law makes a very clear distinction between those parts of the writing conveying them, which declares the gift and its purposes, and those which direct the mode of its administration. . . .

> \*     \*     \*     \*     \*     \*

And this is the doctrine of *cy pres,* so far as it has been expressly adopted by us[,] . . . a reasonable doctrine by which a well-defined charity, or one where the means of definition are given, may be enforced in favor of the general intent, even where the mode or means provided for by the donor fail by reason of their inadequacy or unlawfulness.[9]

Although this Court has not had occasion to apply the *cy pres* doctrine since that time, the Court referred to the continued existence of the doctrine in a recent case, explaining:

> [*Cy pres*] is a doctrine that is sometimes invoked where there has been a gift or bequest for a charitable purpose, which for some reason cannot be literally carried out, and something closely analogous is done which comports with and fulfills what appears to be the donor's intention and purpose.[10] [Footnote omitted.]

In the instant case, application of the *cy pres* doctrine clearly requires that the trust money in question be used to benefit Primary Children's Medical Center. The language of the trust residuary clause, quoted above, unambiguously expresses the intention of the trustors that one-half of the residue be used for this purpose.[11] Although the parties agree that this objective can no longer be accomplished by channel-

---

6. *In re Estate of Coleman,* 2 Kan.App. 567, 584 P.2d 1255, 1261 (1978).

7. See, *e.g., Dunbar v. Board of Trustees of George W. Clayton College,* 170 Colo. 327, 461 P.2d 28 (1969); *Boston Seaman's Friend Society v. Attorney General,* 379 Mass. 414, 398 N.E.2d 721 (1980); *In re Estate of Thompson,* Me., 414 A.2d 881 (1980); *Farmers & Merchants Bank v. Woolf,* 86 N.M. 320, 523 P.2d 1346 (1974); *In re Jones,* 138 Vt. 223, 415 A.2d 202 (1980).

8. *United States v. Late Corporation of the Church of Jesus Christ of Latter-Day Saints,* 8 Utah 310, 337, 31 P. 436, 442 (1892).

9. *City of Philadelphia v. Heirs of Stephen Girard,* 45 Pa. 9, 25, 28 (1863), quoted at 8 Utah 339, 31 P. 442–43.

10. *Gardner v. Davis County,* Utah, 523 P.2d 865, 868 (1974).

11. The trustors' use of the designation "Children's Latter-Day Saints Hospital" rather than the correct name "Primary Children's Hospital" does not invalidate their gift. In light of the fact that the LDS Church has never operated any children's hospital in the Salt Lake City area other than Primary Children's Hospital, the trustors' reference to "Children's Latter-Day Saints Hospital" creates no ambiguity, and the identity of the intended beneficiary of the trust can be readily ascertained. In a similar case involving an attempted testamentary gift to a well-known Salt Lake City hospital, this Court effectuated the clear intent of the donor to make the gift in spite of his failure to correctly name the hospital in the gift instrument. *Estate of Manatakis v. Walker Bank & Trust Co.,* 5 Utah 2d 412, 303 P.2d 701 (1956). See *In re Estate of Hall v. Father Flanagan's Boys' Home,* 30 Colo.App. 296, 491 P.2d 614 (1971); *Jackson v. Tillamook Growers Co-op,* 39 Or. App. 247, 592 P.2d 235 (1979); *In re Estate of France,* 64 Wash.2d 703, 393 P.2d 940 (1964).

ing the funds through the LDS Church, the doctrine of *cy pres* permitted the trial court to achieve the same purpose by substituting the present owner of the hospital as administrator of the gift. Under the language of the trial court's order, IHC is required to expend the trust money exclusively "for the use and benefit of Primary Children's Medical Center," which continues to engage in the same activities and to perform the same services as it did at the time of the creation of the trust.

The trust instrument contains no language suggesting that the trustors wished to make their gift to Primary Children's Hospital contingent upon continued management of the hospital by the LDS Church; on the contrary, it allocates the remaining half of the trust residue to Shriners' Hospital, a nonchurch-related hospital, showing the unlikelihood of such an intention on the part of the trustors. Nor does the instrument contain any provision for alternative disposition of the Primary Children's Hospital gift in the event that its exact terms cannot be carried out. The absence of such a provision reinforces the conclusion of the trial court that the trustors in this case did not expect to have their gift defeated by the impossibility of literal compliance with the terms of its implementation.[12] We hold that the trial court properly carried out the intent of the trustors by disposing of the trust money in such a way as to ensure that Primary Children's Medical Center received its benefits in spite of a changed administration.

Affirmed.

STEWART and DURHAM, JJ., and BRYANT H. CROFT, District Judge, concur.

OAKS, J., having disqualified himself, does not participate herein; CROFT, District Judge, sat.

HOWE, Justice (concurring in the result):

I concur in the result. I prefer to rest my concurrence on the ground that the trust instrument evinces a clear intent on the part of the trustors to make a gift to a children's hospital institution in Salt Lake City which was then technically named The Primary Children's Hospital but which the trustors erroneously designated The Children's Latter-Day Saints Hospital. That hospital still exists and is still operated for the same purposes, the care of children, as it was when the trust instrument was signed. Only the ownership has changed. That fact is immaterial since it was the trustors' intent to benefit the institution. The gift was made to the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints only because at that time it was the owner of the hospital institution and was the legal entity through which funds had to be channelled to reach the hospital. But there was no intent manifested to benefit the Corporation of the President. On the contrary, the intent was to benefit the hospital institution. As the majority opinion expresses, the trust instrument contains no language even suggesting that the trustors wished to make their gift contingent upon continued ownership or management of the hospital by the Corporation of the President.

Having taken this view of the case, it is unnecessary to discuss or rely upon the cy pres doctrine.

---

12. *In re Estate of Tomlinson,* 65 Ill.2d 382, 3 Ill.Dec. 699, 359 N.E.2d 109 (1976); *Fulton v. Trustees of Boston College,* 372 Mass. 350, 361 N.E.2d 1297 (1977); *State v. Rand,* Me., 366 A.2d 183 (1976); *In re Estate of Carper,* 67 A.D.2d 333, 415 N.Y.S.2d 550 (1979).