No. 22,898.

DAVID WILSON, *Appellant*, v. L. M. BEGSHAW et al., *Appellees.*

SYLLABUS BY THE COURT.

SALE OF REAL ESTATE—*Default in Payments—Forfeiture Would Be Inequitable.* Under the facts and findings herein, as indicated in the opinion, the plaintiff is not entitled to a forfeiture of his contract for the sale of the real estate involved.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed March 12, 1921. Affirmed.

*Frank M. Sheridan,* and *Bernard L. Sheridan,* both of Paola, for the appellant.

*Alpheus Lane,* and *C. T. Meuser,* both of Paola, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued in ejectment and for damages, and from an adverse judgment brings this appeal. The answer alleged that the defendants' decedent, D. V. Watkins, made a written agreement with the plaintiff for an option to purchase the real estate involved, took possession and made certain payments; that payments at the times specified by the contract had been waived by the plaintiff; that about November 1, 1917, the decedent became very ill, and was thereafter wholly incapacitated for business, and died on December 19 following. It was further alleged that sometime after his death the plaintiff offered to carry out the terms of the contract and give to the heirs a deed upon payment to him of the full consideration, but the offer was accompanied by a demand that full payment be made at an impossible time, and full payment was tendered within a reasonable time.

The contract was dated February 23, 1915, and gave the defendants' decedent the right to buy the land within five years from the first day of December, 1914. Upon the conditions set forth Watkins was to take possession and pay an annual cash rental of $252 on December 1 of each year, and all the taxes, and to keep the place in good repair, with the privilege of making a payment of $4,200 in cash at any time within five years and completing the purchase.

"But it is hereby specially agreed that if the said second party shall fail to make any of the annual payments of rent, or any of the taxes as herein provided, when the same are due and payable, then he shall, at the option of the said first party, forfeit all his rights and options to purchase said premises under the terms of this agreement, and shall forfeit all money paid as rent, or taxes, or for improvements, and the same may be held by said first party as his liquidated damages in full for said second party's failure to comply with the terms of this contract."

The court in its decree found among other things that Watkins took possession and made permanent improvements of the value of $500; that in December, 1915, Wilson paid the 1915 taxes, and on July 12, 1916, Watkins paid Wilson the 1915 taxes and the $252 due December 1 of that year; that in December, 1916, Wilson paid the 1916 taxes, and on February 13, 1917, Watkins paid him the 1916 taxes and the $252 payment due December 1, 1916; that something like three weeks prior to his death Watkins became very ill, and for several days prior to December 1, 1917, he was incapacitated, both physically and mentally, and died December 17, 1917. It was further found that his failure to make payment December 1, 1917, did not operate as a forfeiture; that the administrator of Watkins tendered Wilson $252.20, the payment due December 1, 1917, with legal interest thereon from the time it was due, and the taxes paid December 14, 1917, with legal interest thereon from the date of payment, which tender was refused; that when this action was brought Wilson had not served notice on Watkins nor on the administrator or heirs of any election to declare the contract forfeited, and that Wilson paid the taxes for the years 1918-1919; and the heirs upon trial tendered in open court $5,145.81, the full amount due on the contract, which tender was deposited in court and was ordered held by the clerk, to be paid by him to Wilson upon delivery of a proper deed.

Wilson v. Begshaw.

A witness testified that on a certain day the plaintiff informed the defendants that he would give them ten days or two weeks in which to make full payment, and would give them until two o'clock in the afternoon to consider and answer; that the witness remained with the plaintiff until after two o'clock and then went with him to his home, and that at no time up until two o'clock or from that time on did any one indicate to the plaintiff that the offer would be accepted.

Mr. Sheridan testified that he was present at the conversation, and the defendants' answer to the proposition was, they could not raise the money so soon, and Mr. Wilson said: "Let me know what you are going to do and you can have ten days to raise the money." Mr. Fox made a similar statement.

The plaintiff testified:

"I told them that according to the contract that when he defaulted the place reverted to me, that was all that was on there. They didn't think it was. They objected and they wanted the same chance that he had and let them go on and pay out on the place that he had, to pay out on the contract."

He further testified that he (the plaintiff) said, "I will give you to 2:00 o'clock to decide whether you will take it or not, and if you will decide to take it over, I will give you ten days or two weeks," and that "Mr. Bachman said they could not raise the money, and I said, 'I will give you ten days or two weeks to think it over.'"

It seems that after the death of Mr. Watkins the heirs did not know where the contract was, that Mr. Wilson went to Paola and took it with him, and there this discussion was had; and it was claimed by a brother-in-law in his testimony that they were given until 2 o'clock that afternoon to make payment, and that Wilson said he wanted all the money within two hours time.

It was found that on February 20, 1918, a tender was made of the $252.20 due December, 1917, with legal interest, and the taxes paid December 14, 1917, with legal interest thereon, which tender was refused. This was after the date said to be "about the middle of February," when the Paola talk took place, and there is abundant evidence to support the finding that Wilson had not served notice of his election to declare a forfeiture. The real situation is fairly stated by counsel for the defendants in their brief, to the effect that when the first

35—108 KAN.

annual payment was due no payment was made. The taxes were paid by Wilson and seven months later repaid by Watkins. Wilson paid the taxes, and two and one-half months thereafter he accepted the amount thereof from Watkins. When the next payment became due Watkins was incapacitated by sickness and died in less than three weeks thereafter. His heirs were in possession but did not know the terms of the contract their ancestor had with the vendor. Not until about the middle of February did Wilson make known to them its terms, and then offered to accept the full amount and convey. Shortly after this, full tender was made and refused. Under the situation thus stated and shown by the record it would not be equitable to decree a forfeiture. The tenders secured to the plaintiff all he had required by the terms of his contract, and not until some time after the death of the other party thereto did he show an intention to stand on its strict terms. His desire to do so, if expressed at all, was expressed too late to avail him.

Forfeitures are not to be treated with courtesy, but with only such tolerance as strict legal considerations require. (*Lumber Co. v. Horrigan,* 36 Kan. 387, 13 Pac. 564; *Shade v. Oldroyd,* 39 Kan. 313, 18 Pac. 198; *Cue v. Johnson,* 73 Kan. 558, 85 Pac. 598; 13 C. J. 608, §§ 641-647; Note, 50 L. R. A., n. s., 890, 893, 897, 910.)

The decree of the trial court is sustained.