No. 47,222

In the Matter of the Estate of Emma M. Wurtz, Deceased. GERALDINE MEYER and VERNUS LANGE, *Appellants,* v. RALPH J. WURTZ and HERMAN J. WURTZ, Individually and as Executors of the Estate of Emma M. Wurtz, *Appellees.*

(520 P. 2d 1308)

Opinion filed April 6, 1974.

*Don W. Noah,* of Beloit, argued the cause, and *Jerry L. Harrison,* of Beloit, was with him on the brief for the appellants.

*H. N. Hyland,* of Washington, argued the cause, and *Lee R. Stanford,* of Concordia, was with him on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: This is a family dispute in which two sisters are pitted against two brothers over the terms of their mother's will. The ultimate issue is whether the two brothers have forfeited the right to exercise an option, granted to them by the will, to purchase at a discount 180 acres of Washington county farm land owned by their mother at the time of her death.

The testatrix, Emma M. Wurtz, was survived by two sons and three daughters. The sons, Ralph J. Wurtz and Herman J. Wurtz, are the appellees. Two of the daughters, Geraldine Meyer and Vernus Lange, are the appellants. The third daughter, Marie Hartman, has taken no part in this litigation.

Mrs. Wurtz died on May 7, 1970, leaving a four-paragraph will. In the first she directed payment of her debts and funeral expenses. In the second, she described her real estate (the 180 acres in question, consisting of three separate parcels, but also erroneously including a quarter section in which she held only a life estate). In the same paragraph she went on to provide:

"It is my will that Ralph J. Wurtz and Herman J. Wurtz shall have an option for the period of six months from the date of my death to purchase all of the real property owned by me, including the above described real property, for the appraised value thereof, less a deduction of the sum of One Thousand Dollars ($1,000.00), and if said option is exercised said Ralph J. Wurtz and Herman J. Wurtz shall file a statement in the Probate Court of Washington County, Kansas, within said period of time that they have exercised said option, and after the filing of said statement the said Ralph J. Wurtz and Herman J. Wurtz shall have an additional period of six months in which to pay the purchase price for said real property. If the said Ralph J. Wurtz and Herman J. Wurtz do not exercise said option then they shall sell said real property as Executors and the purchase price shall become a part of the assets of said estate."

The third paragraph gave the residue of the estate to the five children equally. The fourth named Ralph and Herman as executors.

After the will was probated and the executors qualified, the next step was the selection of appraisers. The subject was discussed at a family meeting at which all the children and their respective spouses were present. The brothers, as executors, were represented at this stage by Robert H. Meyer, a Mankato attorney and the husband of their sister, the appellant Geraldine Meyer. A suggestion that one of the appraisers be a real estate broker was rejected, and the family settled on three neighboring farmers who were friends of the family

and familiar with the land. The three so chosen were later suggested to and appointed by the probate court.

At this meeting Robert Meyer, the attorney, was asked whether the appraisers should be shown the will. His reply was, "I don't care whether they are shown the will or not, but they should be instructed this isn't the ordinary appraisement, if they get it too high the boys are going to be hurt, and if they get it too low the girls are going to be hurt, and tell them to do the job of putting it right where they think the market value was on the date of her death."

The present difficulty arose when, on July 20, 1970, the appraisers returned a total valuation of $27,000 for the 180 acres. This struck the girls as somewhat low. There followed another family meeting at which the appraisal figure was discussed, along with the suggestion that a new appraisal be secured. At this meeting, as a means of settling the question without a formal reappraisal, there developed an informal bidding session, with Ralph and Herman vying against each other for the right to purchase the 180 acres. The bids had reached $36,500 when the question of the other quarter-section was raised. This was the quarter in which the testatrix had only a life estate, and which had devolved upon the five children equally upon her death; Herman wanted to know if he could buy it for $20,000. The interjection of this new issue brought the bidding to a halt, and the meeting broke up without an agreement of any kind being reached.

On October 5, 1970, Ralph wrote to his sister Geraldine and her husband Robert Meyer saying,

"I have been waiting on some kind of answer regarding your pricing on the farm or farms. Our time is getting short.

"I hate to think what will happen after the six months are over, sentiments are getting at low ebb, I am not admitting names.

"I wish we could close things in a honest face to face deal, and try to safe [sic] for the estate what I think will gradually will be thrown away.

"I am willing to give what I have offered on the home place, which was a lot more th[a]n appraise valuation, and their [sic] is no question about the level head gentlemen that did the job. Their [sic] is no question that their appraisal will stand as quoted and could be used as our buying power."

There was apparently no response to this letter. Three days later Ralph and Herman executed a document containing an election to exercise their option to purchase, prepared by their present counsel. The trial court made a finding, disputed in this court and discussed

later, that this document was filed in the probate court the same day, October 8, 1971.

The next family gathering was at Thanksgiving, when some 40 to 50 gathered for dinner at the Langes'. There was no discussion of the estate at this affair, and the family was apparently still on relatively amicable terms.

In January, however, the storm broke. The family was summoned to a meeting at Herman's house on January 24, 1971, and the girls were there advised that since no agreement had been reached the boys were going to take the 180 acres for $26,000, that being the appraised value less $1,000 as provided in the will. Five days later this suit was instituted.

The original petition filed in the probate court is not in the record, but the district court findings contain an uncontested recitation that what it prayed for was the appointment of new appraisers. Appellees advise us in their brief that the probate court refused to vacate the original appraisal, and that refusal was appealed to the district court. In addition, certain other contested matters were transferred to the district court, apparently involving an accounting for debts alleged to be owed by Ralph and Herman to their mother at the time of her death. (This latter issue was withdrawn from the district court's consideration, and is of no further concern.)

The district court filed a pre-trial order which recited that it superseded the pleadings, and specified the relevant issues of law and fact to be determined as follows:

"a. What are the rights of the parties under the Will of Emma M. Wurtz, dated July 19, 1961;
"b. Did the Executors return a complete inventory of all of the property of Emma M. Wurtz;
"c. Did the appraisers appraise the real estate belonging to the estate of Emma M. Wurtz at its full and fair value as of the date of her death;
"d. If not, what was the full and fair value of said real estate as of the date of death of decedent; . . ."

The case was tried to the court, which made the following pertinent findings of fact:

"4. The integrity and good faith of the appraisers, above named, is unquestioned. However, the return of the appraisement did not reflect the full and fair value of said real estate as of the date of death of Emma M. Wurtz, deceased.
"5. It was the intention of the testatrix, according to the 2nd Paragraph of her Will, that Ralph J. Wurtz and Herman J. Wurtz have the privilege of purchasing certain real estate for $1,000.00 less than the full

and fair value. The return of the appraisement by the appointed appraisers did not accomplish this intent.

"6. Ralph J. Wurtz 'and Herman J. Wurtz filed with the Probate Court of Washington County, Kansas, their statement to take real estate under the provisions of the Will on October 8, 1970.

"7. January 29, 1971, appellants filed their petition in the Probate Court of Washington County, Kansas, praying for appointment of new appraisers. Ralph J. Wurtz and Herman J. Wurtz have not paid into court any sum of money as provided by the 2nd Paragraph of the Will of Emma M. Wurtz, deceased. However, on May 6, 1971, they filed their petition asking the option be continued.

"8. Upon the filing of the petition for appointment of new appraisers and the appeal from the ruling of the Probate Court, there was no criterion for Ralph J. Wurtz and Herman J. Wurtz to base the amount of money to be paid into Probate Court in accordance with the 2nd Paragraph of said Will heretofore mentioned. In the event a new appraisement was to be filed, the amount of money which they would have paid in would have been incorrect, and technically they would still have been in violation of said 2nd Paragraph."

In its conclusions of law the trial court found that the original inventory and appraisement was void, and set it aside. It directed a new appraisal, and in an amendment to its order appointed three persons to conduct such appraisal. It also found:

"3. Ralph J. Wurtz and Herman J. Wurtz have, as far as possible, complied with the conditions contained in the 2nd Paragraph of said Will, and appellants are estopped from claiming non-compliance.

"4. It is the further order of the Court that Ralph J. Wurtz and Herman J. Wurtz have a reasonable time after the filing of the inventory, as herein provided, to exercise their rights under the 2nd Paragraph of said Will."

In their appeal to this court the girls first challenge the trial court's finding that the boys' election to purchase was filed on October 8, 1970. They contend that there is no competent evidence to support such a finding, and would conclude that by failing to make their election within the time specified the boys have forfeited their option.

The document itself, found in the vault of the probate court, bore the typewritten notation "Case No. 6783, Estate of Emma M. Wurtz, Dec'd, Option to Take Real Property Under Terms of Will, Filed October 8, 1970." The probate court is a court of record (K. S. A. 1973 Supp. 59-301). "One of the essential characteristics of a court of record is that there is a strong presumption as to the veracity of its records. . . ." (20 Am. Jur. 2d, *Courts*, § 55. Cf.,

*Goetz v. Hand,* 185 Kan. 788, 347 P. 2d 349, Syl. ¶ 3; *O'Driscoll v. Soper,* 19 Kan. 574.) Thus the recital alone was *prima facie* evidence of the filing date. In addition, both Ralph and Herman testified to signing the election in their attorney's office. While neither remembered the exact date, both were sure it was before the six months option period was up, which would have been November 7, 1970. There is nothing to suggest any reason for counsel to hold the document in his office rather than promptly file it. While the evidence of the filing left something to be desired, we believe it was sufficient to support the trial court's finding.

There was, no doubt, evidence from which the trial court could have made a contrary finding. Appellants point in particular to a letter dated January 7, 1971, in which the probate judge pro tem. advised Robert Meyer that no papers had been filed in the estate after the filing of the notice of appointment of executors on July 17, 1970. Had the election been on file, they say, the judge pro tem. would have said so. However, the force of this evidence was severely impaired by the fact that the "inventory and appraisement" was undoubtedly filed on July 20, 1970, yet it was not mentioned in the letter either. In any event, it was the function of the trial court to weight the evidence and resolve any conflicts. It has done so, and we are not at liberty to reweigh the evidence on appeal. *Rymph v. Derby Oil Co.,* 211 Kan. 414, 507 P. 2d 308, Syl. ¶ 3; *Short v. Sunflower Plastic Pipe, Inc.,* 210 Kan. 68, 500 P. 2d 39, Syl. ¶¶ 1 and 2.

Appellants next contend that, even assuming the election was timely filed, the boys forfeited their right under the option by not paying into court the $26,000 called for within six months of such filing, which would have been April 8, 1971. They assert that the will imposed an absolute duty to pay within that time, despite the fact that since January 29, 1971, this litigation had been pending in which they were vigorously contending that such a payment would be inadequate and would not comply with the terms of the will.

In support of their contention appellants cite cases dealing with conditional devises, involving such questions as whether a condition is one "precedent," whether it imposes a "charge" upon the land, and whether there is a "gift over" if the condition is unfulfilled. As we see it, those cases are inapposite here. Mrs. Wurtz made no devise of her land to anyone; she directed a *sale* of the land in any

event, and made a gift of the net proceeds. She did, however, extend an *option* to her two sons to *purchase* the land, for a price to be determined by the appraisers of her estate. Viewed in this light, the rights of the parties must be determined according to the rules applicable to option contracts, not devises of real estate.

A few of these well established rules will be sufficient to establish the propriety of the trial court's conclusion on this issue:

First, "Courts abhor forfeitures, and will resort to any reasonable rule of construction to avoid them." (*Cue v. Johnson,* 73 Kan. 558, 85 Pac. 598, Syl. ¶ 1.) Put another way, "Forfeitures are not to be treated with courtesy, but with only such tolerance as strict legal considerations require." (*Wilson v. Begshaw,* 108 Kan. 543, 546, 196 Pac. 605.) In particular, "where the enforcement of the forfeiture provisions of a contract for the sale of land would be inequitable the forfeiture will not be decreed." (*Reger v. Sours,* 181 Kan. 423, 427, 311 P. 2d 996.) Hence the trial court properly applied equitable principles and sought a course which would not unnecessarily work a forfeiture of the appellees' rights under the option.

Second, "A tender or demand otherwise indispensable is no longer required when its futility is shown." (*Gardner v. Spurlock,* 184 Kan. 765, 339 P. 2d 65, Syl. ¶ 4.) And, "where the exercise of an option contemplates tender of the purchase price as a part of the acceptance, repudiation of the contract by the optionor, in the face of readiness, willingness and ability to conform on the part of the optionee excuses tender during the time limit of the contract and entitles the optionee to all available remedies including specific performance." (Id., p. 772.) Under these principles it was not required that Ralph and Herman pay in the $26,000. The appellants had for practical purposes assumed the roles of optionors vis-a-vis the boys as optionees. They had repudiated the contract in an anticipation of any tender, indicating by the very institution of this suit that any such payment would not satisfy them. Under these circumstances the appellees were not required to make a futile gesture in order to preserve their rights under the option.

Third, "There is a well-recognized rule, 'That one who prevents a thing may not avail himself of the nonperformance which he has occasioned.'" (*Fourth Nat'l Bank v. First Presbyterian Church,* 138 Kan. 102, 105, 23 P. 2d 491.) The amount to be paid for the land depended on the "appraised value." So long as this litigation

was pending, that value was an unknown quantity. This suit was instituted for only one ostensible purpose, and that was to set aside the first determination of appraised value as void. It was the pendency of this suit which effectively prevented the appellees from strictly complying with the terms of the option. Hence appellants, who had instituted the litigation, were estopped from claiming any advantage from their own action and the trial court correctly so held.

Appellants complain of the application of this last rule because "estoppel" is an affirmative defense, and was not specifically pleaded. The difficulty with that position is that when the case came before the district court *all* the prior pleadings were discarded in favor of the pre-trial order. In that order the sole issue of law was "What are the rights of the parties" under the will. It was under this broad, generalized issue that appellants asserted their own claims: first, that the election wasn't timely filed, and second, that failure to pay in worked a forfeiture—neither of which was pleaded. If it was broad enough to encompass those two distinct claims, both newly raised in the district court, it was surely broad enough to permit the court to find an estoppel.

Finally, appellants assert that the trial court should itself have determined the "full and fair value" of the real estate, rather than merely appoint new appraisers.

It is true that the pre-trial order listed such value as an issue to be determined, but on reconsideration the trial court concluded on its own initiative that it had no jurisdiction to appraise an estate itself. Appellants cite us no authority, statutory or otherwise, for their position to the contrary.

The district court, in its first conclusion of law, declared the original appraisement "void" and set it aside. None of the parties have appealed from this order, and it is final. The estate at that point stood as if no appraisement had ever been made. The applicable statute, K. S. A. 1973 Supp. 59-1202, requires that the appraisement of estate property be made by three distinterested appraisers to be appointed by the court. Nowhere do the statutes authorize the court to make its own appraisement; a probate court which presumed to do so in the first instance would be overreaching its authority. We therefore conclude that the trial court correctly resolved this issue by the appointment of new appraisers. Certainly appellants can shown no prejudice from this course.

In the final analysis, appellants have been awarded just what they originally sought—a new appraisement of the real estate. They have been properly denied the fortuitous fruits of forfeiture because it was their own action which prevented appellees from strictly complying with the terms of the option. There is no error and the judgment is affirmed.

APPROVED BY THE COURT.