NOT DESIGNATED FOR PUBLICATION

No. 118,307

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
LANNY LENTZ.

MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANK J. YEOMAN JR., judge. Opinion on remand filed
August 13, 2021. Affirmed.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for
appellant Diann Wyatt.

*Alan V. Johnson* and *Aaron R. Bailey*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe,
L.L.C., of Topeka, for appellees Lana Kennedy and Marilyn Lentz.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM:  This appeal arises from the district court's distribution of Lanny
Lentz' estate among his three daughters. The contentious probate process is before our
court for the second time.

Diann Wyatt is one of three heirs to Lentz' estate, which owns several properties in
Topeka. The other two heirs—Lana Kennedy and Marilyn Lentz (referred to individually
by their first names and collectively as Appellees)—sequentially served as executors of
the estate. During their respective times in that role, Appellees petitioned to settle Lentz'
estate. Diann alleged mismanagement of the estate, successfully opposed Lana's petition,
and sued for damages. But after Lana resigned as executor, Diann withdrew her claim for
damages.

1

Marilyn replaced Lana as executor and filed an amended inventory and proposed settlement. Diann objected again, challenging the accuracy of Marilyn's valuations of the real properties. The district court approved a modified final settlement. Diann moved posttrial to set aside or reconsider the final order and to reinstate her damages claim against Lana. She also objected to Marilyn's request to be discharged as the executor and asked the district court to disgorge her executor fees back to the estate. The district court denied Diann's posttrial motions. Diann appealed, arguing the property values for four properties in the final settlement were not supported by substantial competent evidence.

A panel of this court dismissed Diann's appeal as untimely, finding Diann's posttrial motions could not be construed as motions to reconsider under K.S.A. 2019 Supp. 60-259(f) and thus did not toll her time to file her appeal. *In re Estate of Lentz*, No. 118,307, 2019 WL 494098, at *7 (Kan. App. 2019) (unpublished opinion). But our Supreme Court granted review and reversed. It held that a motion timely filed under K.S.A. 60-259(f) and not completely devoid of merit should be construed as a motion to reconsider. So Diann's posttrial petitions were motions to reconsider that tolled the time to appeal the final order, rather than motions for relief from judgment that did not toll the time to appeal. The court remanded the appeal to us with directions to consider the merits of Diann's appeal. *In re Estate of Lentz*, 312 Kan. 490, 504, 476 P.3d 1151 (2020). We do so now yet find no reason to reverse.

*Factual and procedural background*

Lentz died in 2012. His will directed that his estate be distributed equally between his three daughters: Lana, Marilyn, and Diann. Lentz also executed a document in September 2007 directing that some of the estate's real properties be given to specific heirs.

2

Lana petitioned to admit the will into probate; the district court granted her petition and issued her testamentary letters to administer the estate under the Kansas Simplified Estates Act, K.S.A. 59-3201 et seq.

In 2013, Lana filed an inventory and valuation of the decedent's probate assets, including 12 real properties. The value given to four of those properties leads to this appeal. Lana valued those properties as: (1) 605 S.W. Lindenwood Ave. - $83,680; (2) 613 S.W. Lindenwood Ave. - $61,150; (3) 517 S.W. Polk - $17,640; and (4) 2723 S.E. Monroe St. - $17,000. Lana did not explain how she made these valuations.

In 2014, the three heirs signed a family settlement agreement (FSA), agreeing to dispose of the property as directed in Lentz' 2007 document. Lana alleged that the FSA would fulfill the intent of Lentz' will because the properties would be divided using their fair value and any offset in the total value distributed to each heir would be evened by other means.

In September 2015, Lana filed the FSA and her accounting of the estate with a petition for a final settlement, asking the district court to approve the distribution of the estate per the terms of the FSA. As a part of her proposal, Lana elected to sell the 613 S.W. Lindenwood property and to split the proceeds equally with her sisters. But Diann objected, claiming that Lana had mismanaged the estate. Diann claimed that after the heirs had signed the FSA, she learned that Lana had not addressed all the estate's assets. Lana responded by submitting a "revised accounting" of the estate assets, still requesting a final settlement.

The district court held a hearing on Diann's objections. The district court found that by Lana's "own testimony" Lana had:

- failed to complete and accurately inventory the estate's property;

- distributed estate assets without authority, including payments to herself;

- breached her duty to care for the assets by failing to make timely deposits and failing to file tax returns;

- engaged in self-dealing by making loans to herself and distributing assets to herself without approval; and

- delayed estate obligations to distribute assets.

The district court thus rejected Lana's proposed settlement.

Diann then sued Lana for damages and petitioned to remove her as executor; and Lana moved the court to determine the validity of the FSA. Lana argued that if the district court rejected the FSA, then under Lentz' will the estate assets should be distributed to Lentz' revocable trust and dispersed to the heirs according to the trust's terms. The district court set the matter for a settlement conference and ordered Lana to give the parties an updated accounting. Lana did so in December 2015 but also moved to resign as executor.

The district court held that it could not approve the FSA because Lana had mismanaged the estate. The district court scheduled another hearing to allow the parties to respond to several pending issues, including the appointment of a successor executor, approval of Lana's amended accounting of the estate's assets, and consideration of Diann's petition for damages.

In March 2016, the district court allowed Lana to withdraw as executor and appointed Marilyn in her place. The district court approved Lana's revised inventory and valuations of the estate assets and Lana's request for executor fees. Diann then withdrew her petition for damages.

In December 2016, Marilyn, as executor, petitioned for a new final settlement. Although she did not request approval of the FSA, her proposal was similar in that it followed Lentz' will and the 2007 document. She asked the district court to allocate the Lindenwood properties to her and Lana as joint tenants in common and to award the Polk and Monroe properties to Diann. Marilyn valued 605 S.W. Lindenwood at $55,000; 613 S.W. Lindenwood at $30,000; and 517 S.W. Polk and 2723 S.E. Monroe at $17,000 each. Altogether, the properties designated for Lana and Marilyn were valued at $102,000. Diann's two properties totaled $34,000. To achieve a more equal distribution, Lana and Marilyn agreed to take title of the properties as joint tenants in common and to include the obligations owed to each of them as executors. Marilyn also requested $12,000 in executor fees.

Diann objected again. Among other issues, she claimed that the values listed for the Lindenwood properties were inaccurate and the values of the four properties differed from the values in the appraisals Marilyn had given the parties. Marilyn responded that her proposed values reflected the appraised values minus the costs of repairs necessary for sale of the properties.

At a hearing on Marilyn's proposed settlement, Diann suggested that all the properties be sold at auction or on the open market and their proceeds divided equally. Marilyn requested that they follow the terms of the proposal, arguing that Lentz' intent would be best fulfilled by distributing the properties according to the proposed settlement.

As support for the property values she had provided, Marilyn testified that she was qualified to provide Certified Market Analyses (CMA) of the estate's properties because of her licenses and certifications, and she explained how she had valued each property. The record shows that she valued the nonappraised properties at the lower of the original inventory valuation or at the value provided by third-party discussions to purchase the

properties. Marylin testified that she had hired someone to appraise 613 S.W. Lindenwood and that Lana had paid for an appraisal of 605 S.W. Lindenwood. Although the parties received copies of those appraisals, no one included them in the record before the district court, so the appraisals are not a part of the record on appeal. And the record does not show that anyone requested an appraisal of property through a motion to the district court as permitted under K.S.A. 59-1202.

Marilyn testified that the appraised value of 613 S.W. Lindenwood, less the approximate costs of mandatory repairs, was $34,000. 605 S.W. Lindenwood appraised at $60,000, but Marilyn testified that the property required $4,000-$5,000 in repairs. She thus asked the district court to value the property at $55,000. Marilyn based her $17,000 valuation for 517 S.W. Polk on an offer by Rick Ramirez to purchase the property for $15,000-$18,000. And although she believed the CMA value of 2723 S.E. Monroe was $5,000, Marilyn asked the district court to accept the proposed value of $17,000 because the tenant had offered to purchase the property for that amount. Marilyn asserted that if the district court approved the settlement as proposed, each heir would receive distributions valued around $34,000.

The district court reviewed the evidence and found that the same method of valuation should be used for all properties. It thus ordered Marilyn to provide CMA valuations for these four properties, absent a written offer to purchase. Marilyn agreed to correct the petition and to submit the corrections for review by counsel in a final proposed journal entry.

Marilyn sent counsel the revised journal entry the next day, December 23, attaching the amended final accounting and inventory. Lana and Marilyn approved the journal entry, but Diann did not. Still, the district court accepted the journal entry approving the final settlement and its amended final accounting and inventory on December 30, 2016. As the revised journal entry proposed, the district court distributed

6

properties, including the Lindenwood properties, to Lana and Marilyn as joint tenants in common and the Polk and Monroe properties to Diann. The district court used the CMA valuation for all four properties at issue in this appeal.

Although most of the values in the final settlement were close to those given in Marilyn's inventory and trial testimony, they were not identical. The district court adopted the following values for each of the four properties:

- 605 S.W. Lindenwood—$38,787
- 613 S.W. Lindenwood—$41,098
- 517 S.W. Polk—$18,762
- 2723 S.E. Monroe—$17,833

The district court determined that the result of these distributions, combined with another $2,000 payment to Diann, would provide Diann with a distribution valued at $36,595. Appellees' combined distribution totaled $72,251.87, or $36,125.94 each.

Diann filed two postjudgment motions in the district court: a "Petition to Set Aside and/or Reconsider Order of Final Settlement and Reinstitute Claim for Damages Against Former Executrix Lana Kennedy" and an "Objection to Discharge of Executrix, Marilyn Lentz, and Petition to Disgorge Fees for Administration Paid to the Fiduciary." Diann contended that she had mistakenly withdrawn her claim for damages against Lana based on the erroneous advice of her attorney. She also argued that Marilyn should not be discharged as executor because she failed to prosecute her damages claim against Lana and otherwise acted improperly. Diann also requested that Marilyn's $12,000 executor fee be disgorged back to the estate. The district court held another hearing to consider those motions but ultimately denied both and discharged Marilyn as executor.

Diann appealed from the district court's final settlement and its denial of her postjudgment motions. Her appeal argued that the property values in the final settlement were not supported by substantial competent evidence. Appellees argued that our court lacked jurisdiction over Diann's appeal because Diann's petition for reconsideration was filed only under K.S.A. 2017 Supp. 60-260(b)(1) and (2), which does not toll the time to file an appeal. Diann replied that her motion to set aside the final settlement was filed only in part under K.S.A. 2017 Supp. 60-260(b)(1) and (2) and was in part a motion to alter or amend the judgment under K.S.A. 2017 Supp. 60-259, tolling her time to file an appeal.

Another panel of this court found that Diann's postjudgment motions could not be construed as motions to reconsider under K.S.A. 2017 Supp. 60-259 and thus did not toll her time to appeal. See *In re Estate of Lentz*, 2019 WL 494098, at *5. The panel thus dismissed her appeal for lack of jurisdiction.

Our Supreme Court granted review and reversed. It found that the Court of Appeals should have construed Diann's motions as motions to reconsider under K.S.A. 2019 Supp. 60-259 because they were timely under that statute and were not devoid of substance or reason for reconsideration. *In re Estate of Lentz*, 312 Kan. at 502.

Our Supreme Court also noted that although the panel had addressed the merits of Diann's claim, it did so contrary to "the better practice" of not opining about the merits of the issues when jurisdiction is lacking. *Lentz*, 312 Kan. at 504. The Supreme Court found that the issue of whether the district court's decision was supported by substantial competent evidence was not properly before it and thus remanded to this court with directions to consider the merits of Diann's claim. The concurring members of the *Lentz* court suggested that it was necessary to reassign this case to a different panel. 312 Kan. at 507 (Luckert, C.J., concurring).

8

Diann's appeal is now before a new panel. The parties did not submit new appellate briefs, but we considered their original briefs, their supplemental briefs filed in the Supreme Court, the parties' oral arguments, and Appellees' Rule 6.09 letter, as well as the record on appeal.

*The Scope of our Remand*

Our first task is to determine the scope of the remand. We admit some uncertainty on this matter. The Supreme Court decided the issue of jurisdiction, but not the issues of waiver, lack of preservation, or sufficiency of the evidence. The question is whether this panel has the authority to reach the procedural issues of waiver and lack of preservation raised by the parties and the Supreme Court, or whether we must bypass those arguments and address only the substantive issue of the sufficiency of the evidence.

The Supreme Court phrased its directions for remand in two ways:

- "[W]e . . . remand to the Court of Appeals for consideration of the substantial competent evidence issue Diann raised in her brief." 312 Kan. at 503.
- "We therefore remand to the Court of Appeals for consideration of Diann's appeal on the merits." 312 Kan. at 504.

And the concurring justices stated the remand in a third way, agreeing that they would "order that a new panel be appointed *to resolve the issues hypothetically considered by the previous panel*." (Emphasis added.) 312 Kan. at 507 (Luckert, C.J., concurring). Those hypothetically considered issues before the previous panel were primarily Diann's failure to preserve her challenge to the valuations. "Since Diann never gave the district court a chance to address those complaints on valuation, and has not explained why we should grant an exception and now hear those matters on appeal, we decline to consider them for the first time in this appeal." *In re Estate of Lentz*, 2019 WL 494098, at *8-9.

Yet the scope of our task on remand was not an issue before the Supreme Court, so we doubt that the difference in the language the justices used was intentional.

At first blush, the two directions by the *Lentz* majority appear similar, barring our consideration of the waiver or lack of preservation issues and mandating our consideration of only the substantial competent evidence issue. But on closer examination of our Supreme Court's analysis, we find that the waiver issue raised by the Supreme Court and the lack of preservation issue raised by the parties fall within the scope of the remand.

Although one may not typically consider preservation or waiver issues as "the merits," the *Lentz* court alluded to the previous panel's discussion of lack of preservation as "the merits": "And once a Court of Appeals panel concludes jurisdiction is lacking, the better practice is not to proceed to opine about the merits of the issues." 312 Kan. at 504. But the only "merits" issue the panel had opined about was lack of preservation, never reaching the sufficiency of evidence question. *In re Estate of Lentz*, 2019 WL 494098, at *8-9. And the Supreme Court decided only the jurisdictional question, apparently referring to all other issues as the merits. 312 Kan. at 503. We thus broadly interpret the remand as directing us to consider all issues but jurisdiction.

*Do the Facts Show a Waiver Under K.S.A. 59-1202?*

Before the Supreme Court decided Diann's appeal it ordered the parties to brief the impact of K.S.A. 59-1202 on this case. It thus raised the issue whether Diann waived her claim of improper valuation by failing to request an appraisal of property under K.S.A. 59-1202. Appellees contend that Diann waived her claim by failing to request an appraisal of the properties. The Supreme Court did not, however, address that issue before it remanded Diann's appeal to our court.

K.S.A. 59-1202 provides that only parties with an interest in the estate have the right to request an appraisement:

> "No independent appraisement shall be made unless a party having an interest in the estate requests one. If so requested, the personal representative shall appoint not more than three appraisers who shall be approved by the court unless good cause is shown why they should not be approved. Within 30 days after their appointment, such appraisers shall state opposite each item contained in the inventory the value thereof and forthwith deliver such inventory and appraisement, certified by them under oath, to the personal representative, who shall file it with the district court. Such appraisers shall be paid such compensation as the court deems reasonable."

So neither the personal representative nor the district court has a duty to make an independent appraisal of the property. If a party wants an independent appraisal, that party must request one, triggering the process outlined in the rest of the statute.

Although the statute prohibits the personal representative from getting an independent appraisal without a request from a party having an interest in the estate, the plain language of the statute does not mandate that a party request an independent appraisal as a condition of challenging the personal representative's valuation of property in the estate. We thus find that Diann's failure to request an appraisal under K.S.A. 59-1202 did not waive her right to challenge the valuation of the properties. We find it unnecessary to reach Diann's claim that K.S.A. 59-1202 applies only to an initial inventory and valuation of the estate, usually made within 30 days of the personal representative's appointment, and not to a final settlement. See K.S.A. 59-1201.

But the parties' arguments also raise more general issues about who has the burden to prove valuation and by what standard.

11

In *In re Estate of Wurtz*, 214 Kan. 434, 441, 520 P.2d 1308 (1974), our Supreme Court considered K.S.A. 59-1202 and found that a trial court lacks the authority to make its own appraisement—a probate court that presumed to do so would be overreaching its authority. Still, the district court must decide valuation issues as our Supreme Court has generally held that the value of real property is a finding of fact that the district court will decide. See *In re Estate of Hjersted*, 285 Kan. 559, 569, 175 P.3d 810 (2008). And a probate court cannot approve a final settlement without proof. K.S.A. 59-2213.

Kansas statutes address the sufficiency of proof. K.S.A. 59-2212 provides, with an exception not relevant here, that "[t]he determination of any issue of fact or controverted matter on the hearing of any probate proceedings shall be in accordance with the rules of evidence provided for civil cases by the code of civil procedure." Under our civil procedure rules, a party who submits a pleading to the district court certifies that its factual contentions have evidentiary support. K.S.A. 2020 Supp. 60-211(b)(3). And under the more specific probate statutes: "Every application in a probate proceeding, unless made during a hearing or trial, shall be by petition signed and verified by or on behalf of the petitioner." K.S.A. 59-2201. "The verification of the petition pursuant to K.S.A. 59-2201 and amendments thereto shall constitute sufficient proof of the statements made in the petition in the absence of written defenses or any appearance by an adverse party." K.S.A. 59-2213. Similarly, "the personal representative shall make an inventory stating opposite each item contained in the inventory the full and fair value as of the date of death of the decedent, verified by the personal representative's affidavit." K.S.A. 59-1201.

So although Diann did not request an appraisal under K.S.A. 59-1202, Marilyn still had the burden to provide evidentiary support for her claims. And as the executor, Marilyn had the burden to prove her final accounting was correct. *In re Estate of Engels*, 10 Kan. App. 2d 103, 110, 692 P.2d 400 (1984).

12

*Did Diann Fail to Preserve her Claim of Improper Valuation?*

Appellees also argue that Diann's claim was unpreserved because she did not object before the district court to the values in the final settlement order. Appellees contend that Diann never challenged the valuations of these properties at the hearing, never objected to the district court's final valuations, and never argued any valuation issues in her petition to reconsider after the district court's final valuations. Those contentions are supported by the record.

But generally, a party challenging the sufficiency of the evidence on appeal is not required to lodge an objection at trial to preserve the issue. *In re Marriage of Bradley*, 258 Kan. 39, Syl. ¶ 2, 899 P.2d 471 (1995) (parent need not object). Cf. *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008) (criminal defendant need not challenge the sufficiency of the evidence before the trial court to preserve it for appeal). Diann challenges the sufficiency of the evidence on the valuations here. We apply the general rule and find that Diann's failures noted above and by our prior panel do not bar her challenge on appeal to the sufficiency of the evidence on the valuations.

*Were the Property Values in the Final Settlement Order Supported by Substantial Competent Evidence?*

Having resolved the procedural matters, we turn to Diann's argument that the property values the court adopted in the final settlement lack substantial competent evidence. Diann argues that Marilyn failed to meet her burden as executor to provide the district court sufficient proof that her valuations of the real estate properties were accurate. Diann argues that Marilyn overvalued the Polk and Monroe properties and undervalued the Lindenwood properties and thus proposed a settlement that led to an unequal distribution of the estate. Alternatively, Diann argues that even if the evidence Marilyn submitted at trial was sufficient, the values approved in the final settlement

lacked substantial competent evidence because they differed from any values previously proposed.

*Standard of Review*

Generally, the determination of property value is a question of fact. *Hjersted*, 285 Kan. at 569; see *Board of Johnson County Comm'rs v. Smith*, 280 Kan. 588, 597, 123 P.3d 1271 (2005) (condemned property's fair market value is jury question); *In re Estate of Antonopoulos*, 268 Kan. 178, 190-92, 993 P.2d 637 (1999) (value of augmented estate's properties in joint tenancy and value of homestead remanded to district court for determination); *Hotchkiss v. Fischer*, 139 Kan. 333, 31 P.2d 37 (1934) (value of stock in closely held corporation is jury question). We review the district court's factual findings to determine whether they are supported by substantial competent evidence. *Hjersted*, 285 Kan. at 569-70. "Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *In re Estate of Farr*, 274 Kan. 51, 58, 49 P.3d 415 (2002).

When determining this matter, "an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. We also accept as true all inferences to be drawn from the evidence which support or tend to support the findings of the district court." *Hjersted*, 285 Kan. at 571. If the evidence, when considered in the light most favorable to the prevailing party, supports the district court's judgment, we will not disturb it on appeal. *Engels*, 10 Kan. App. 2d at 110.

14

*Our law sets a broad standard for acceptable valuations.*

Much of what Diann argues on appeal turns on the values that she argues can or cannot be attributed to properties based on the evidence presented in the district court. But we cannot "determine the persuasiveness of evidence that the district court may have believed." *In re Estate of Rickabaugh*, 305 Kan. 921, 935, 390 P.3d 19 (2017). As this case shows, sometimes our appellate courts must toe a thin line between addressing evidentiary concerns and reweighing evidence. See, e.g., *Hjersted*, 285 Kan. at 570 (discussing procedural errors in this court's consideration of a similar issue and finding "the Court of Appeals was incorrect in establishing several legal reasons" for its decision about substantial competent evidence in determining property value).

We decline Diann's invitation to set specific rules or methods for valuing the properties. "On questions of fact, such as the question of valuation, our system recognizes that a district court is uniquely suited to resolving the issue." 285 Kan. at 591 (Davis, J., concurring).

And we disagree with Diann's assertion that Marilyn was required to provide the fair market value of the properties using certified market appraisals for each property. This claim is both unpreserved and unsupported. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failure to provide support for position akin to failing to brief an issue); *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016) (unpreserved issues cannot be raised on appeal). The three cases Diann cites as authority for her argument do not apply here because they deal with the statutory requirements for appraising commercial and residential housing for ad valorem tax purposes. See *In re Equalization Appeal of Prieb Properties, L.L.C.*, 47 Kan. App. 2d 122, 130, 275 P.3d 56 (2012); *In re Equalization Appeal of Brocato*, 46 Kan. App. 2d 722, 727, 277 P.3d 1135 (2011); *Board of Saline County Comm'rs v. Jensen*, 32 Kan. App. 2d 730, 735, 88 P.3d

15

242 (2004); see also K.S.A. 79-503a (requiring appraisal processes conform to generally accepted appraisal procedures and standards).

In contrast, the relevant probate statutes do not specifically require the use of fair market value or certified appraisals when determining the value of estate assets. Rather, K.S.A. 59-1201 requires that the personal representative of an estate provide an inventory stating the "full and fair value" of "all real estate and tangible property owned by the decedent" at the time of the decedent's death. This establishes a broad standard for acceptable valuations.

*Marilyn provided sufficient proof of her valuations.*

Marilyn, as the executor of Lentz' estate, had to "present a verified account of administration within the time limited and make application to the court to settle and allow . . . her account and to assign the estate to the persons entitled thereto." K.S.A. 59-1502. She was also required to prove that her final accounting was correct. See *Engels*, 10 Kan. App. 2d at 110.

Diann does not argue that the district court erred in requiring Marilyn to use CMA values or that the appraised values were more accurate than the CMA values. Nor does she argue that the district court had to use the valuation from the 2015 inventory, which the court had approved and not vacated.

Instead, Diann protests that no appraisals or copies of the CMA's were given to the district court. But if Diann wanted documents in the record, she should have acted during the hearing to submit them as exhibits or to object to the fact they were not exhibits of record. At any rate, the lack of such documents from the record does not prevent us, and did not prevent the district court, from relying on other evidence of valuation.

That evidence of valuation came from Marilyn. As personal representative of the estate, she verified the petition of final accounting and inventory that she submitted to the district court. And her verification is sufficient proof of the statements made in the petition, including her valuations, without any contradictory evidence. See K.S.A. 59-2213.

Diann provided no contradictory evidence. Although she could have requested an independent appraisal under K.S.A. 59-1202, she did not do so. Nor did she give the district court any other evidentiary basis for rejecting the final amended CMA valuations Marilyn had made.

Still, Diann contends that Marilyn's own evidence is contradictory and that the final numbers the district court approved lack substantial evidence because they differ from the valuations stated in the 2015 inventory, in the 2016 inventory, at the hearing, and in Marilyn's final inventory. True, the evidence of value differed over time. Until December 2016, all the estate's inventories valued 605 S.W. Lindenwood at $83,680; 613 S.W. Lindenwood at $61,150; 517 S.W. Polk at $17,640; and 2723 S.E. Monroe at $17,000. Later Marilyn valued 605 S.W. Lindenwood at $55,000; 613 S.W. Lindenwood at $30,000; and 517 S.W. Polk and 2723 S.E. Monroe at $17,000 each. Then, Marilyn stated different values in her trial testimony, including $17,000 for 513 S.W. Polk based on an offer for between $15,000 and $18,000 dollars. And she testified that the CMA value for 2723 S.W. Monroe was $5,000 but should be valued at $17,000 because she had received an offer to purchase it for that amount.

But then the district court directed Marilyn to value all properties using the same method—the CMA—so she did so and included those valuations in her final amended inventory and accounting. The district court adopted her amended valuations, finding the value for 605 S.W. Lindenwood was $38,787; 613 S.W. Lindenwood was $41,098; 517 S.W. Polk was $18,762; and 2723 S.E. Monroe was $17,833.

17

Although the values proposed and the values approved in the final settlement were close, each of the court-approved values was different than evidence previously presented. But the reason they differ is that the district court, after hearing Marilyn's testimony about how she had valued the properties, directed her to value all four properties using the same method—the CMA. The district court found that using CMA values would "provide consistent valuations to support the distribution of the real property in equal shares to the heirs." No one challenges that finding.

Marilyn complied with the district court's direction and gave copies of her amended final accounting and inventory to counsel for all parties the day after the hearing, as reflected on Exhibit A to the journal entry approving final settlement. The exhibit shows the new valuations for the four properties and states each valuation was based on "CMA." Counsel for Lana and Marilyn approved that amended journal entry, but counsel for Diann did not. Still, the district judge apparently found that the journal entry complied with its directions and decisions because he signed and filed it. And Diann failed to challenge that decision within 14 days after service of that decision. See Supreme Court Rule 170(c) (2021 Kan. S. Ct. R. 232).

Diann complains that the final numbers approved by the district court lack substantial evidence, since they differ from the evidence at and before trial. For example, Marilyn and Diann testified that the CMA value Marilyn had provided to counsel for 2723 S.E. Monroe was $5,000, but Marilyn's amended final accounting and inventory valued it at $17,833. And the two properties awarded to Diann in the amended final accounting and inventory are valued higher than any previous valuation, while one of the properties awarded to Lana and Marilyn is valued significantly lower than any previous valuation. Diann contended during oral argument that the final valuations of her properties were artificially inflated, while those for the properties awarded to Lana and Marilyn were artificially deflated, but she shows no evidence to support those assertions.

18

We cannot turn a blind eye to the reason the valuations changed. Marilyn filed a verified inventory, then changed it after the trial in accordance with the district court's specific direction that she do so, not arbitrarily. We cannot ignore the uncontradicted evidence that Marilyn testified that she was certified to provide CMA values because of her licensing and certifications. No one objected or asked what those license or certifications were, and no one challenged Marilyn's statement or her qualifications to give CMA values, as the district court required. Marilyn was qualified to do CMAs, did CMAs for the four properties, and then attached to the journal entry her inventory based on those CMAs. She thus stated the full and fair value of each property.

The evidence, considered in the light most favorable to Marilyn and Lana, supports the district court's judgment.

Affirmed.